**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFREY ALLEN, individually and on behalf of other similarly situated employees of Chicago Police Department,** | ) | |
| **Plaintiff,** | ) | **Case No. 10 C 3183** |
| v. | ) | **Magistrate Judge Sidney I. Schenkier** |
| **CITY OF CHICAGO,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**[1]

Plaintiff Jeffrey Allen, a Chicago police sergeant, brings this suit on behalf of himself and a putative class of employees of the Chicago Police Department ("CPD") (collectively, "plaintiffs") against the City of Chicago, alleging that the City violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), by failing to pay plaintiffs all compensation they were due, specifically, overtime compensation they were due for working in excess of 171 hours during a 28-day work period (doc. # 25: Compl. at ¶¶ 1-2).[2] Plaintiff seeks monetary damages in the form of overtime compensation and liquidated damages equal to the class's unpaid compensation and overtime compensation, plus interest, and reasonable attorney's fees, costs, and expenses (*Id.* at 7). The City previously filed a motion to dismiss the complaint for failure to state a claim (doc. # 26), which we denied. *See Allen v. City of Chicago*, No. 10 C 3183, 2011 WL 941383 (N.D. Ill. Mar. 15, 2011).

---

[1]On December 21, 2010, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1(b), this case was assigned to this Court for all proceedings, including entry of final judgment (docs. ## 35, 38).

[2]"Compl." refers to plaintiff's first amended complaint, which plaintiff was granted leave to file on October 5, 2010 (doc. # 24).

The Court then set a schedule for the parties to complete "all discovery related to the opt-in issue" (doc. # 48). After several extensions of that discovery cut-off, on October 10, 2012, after completion of opt-in class discovery, plaintiff filed a motion for conditional certification of a collective action under the FLSA (doc. # 66: Pl.'s Mot. for Cond'l Cert.). In that motion, plaintiff requests that this Court conditionally certify the following opt-in class under the FLSA:

> A Sworn Member at or below the rank of Lieutenant who has been employed by the Chicago Police Department in the Bureau of Organized Crime, and who has been in possession of a Department issued BlackBerry Device and who has worked a minimum of 171 hours, including uncompensated off duty hours, over a twenty-eight (28) day pay period at least once during the past three years; and has used a Department issued BlackBerry for work purposes while off-duty during at least one of the aforementioned pay periods.

(Pl.'s Mot. at 1). Plaintiff also asks that we authorize issuance of notice of the pendency of the lawsuit to individuals who were "assigned or detailed to the Bureau of Organized Crime at any time during the three years immediately preceding the conditional certification of this collective action, and holding the rank of lieutenant and below so that they can opt-in to the case and have their FLSA claims collectively litigated" (Pl.'s Mot. at 2).

For the reasons set forth below, we grant plaintiff's motion for conditional certification. We deny without prejudice plaintiff's request that the Court authorize the use of the consent form attached to the motion, pending the parties' efforts to reach agreement on the form of notice and the particulars of the consent form to be used.

## I.

The named plaintiff, Sergeant Allen, is currently employed as a Police Sergeant for the City of Chicago ("the City") (Pl.'s Mot. at 1). Sergeant Allen was first assigned to the Organized Crime

Division, now referred to as the Bureau of Organized Crime ("BOC"), in 1999 (doc. # 67: Pl.'s Mem. in Supp. of Mot. for Cond'l Cert. at 1).[3]

Plaintiff alleges that, at various points in the last three years, he and other similarly situated employees of the CPD were issued Personal Digital Assistants ("PDAs"), or BlackBerries, that they were "required to use" to perform work outside of normal working hours without receiving compensation – including overtime compensation (Compl. at ¶¶ 2, 10). He alleges that CPD work was "routinely and regularly accomplished through the use of these PDAs," and that "[w]ithout these PDAs and the work routinely performed while off-duty, the Chicago Police Department would be far less successful in accomplishing its law enforcement mandate and goals" (*Id.* at ¶¶ 17-18). In addition, plaintiff alleges that the City did not keep appropriate records as required by the FLSA to determine wages, hours, and other conditions and practices of employment (*Id.* at ¶ 20).

Through discovery, plaintiff has narrowed his claims to focus on 180 to 200 sworn CPD personnel within BOC who have held a rank no higher than that of Lieutenant (Pl.'s Mem. at 1). The parties have deposed at least eight current or former Lieutenants and Sergeants who work or have worked in BOC. In his memorandum in support of the motion, plaintiff asserts that:

> All of the depositions taken to date reveal a workforce in the Bureau of Organized Crime that is expected to be available twenty-four [hours] per day via Blackberry. All of the deponents receive and respond to an onerous amount of email and telephone calls on a daily basis. All deponents felt obligated to respond to these email communications and telephone calls while off duty. Regrettably, a culture has developed where police officers feel compelled to work for free in order to possibly gain a promotion and/or maintain their coveted assignment in a specialized unit.

(*Id.* at 13-14).

---

[3]For ease of reference, we refer to the Bureau of Organized Crime, formerly the Organized Crime Division, as "BOC" throughout this opinion.

II.

Section 216(b) of the FLSA authorizes plaintiffs to bring a "collective action" against an employer to recover unpaid overtime compensation for themselves and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action brought pursuant to Federal Rule of Civil Procedure 23, under the FLSA, "plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)).

District courts have considerable discretion in implementing Section 216(b). *Madden v. Corinthian Colls., Inc.*, No. 08 C 6623, 2009 WL 4757269, at *1 (N.D. Ill. Dec. 8, 2009) (citing *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989)). Neither the Supreme Court nor the Seventh Circuit has specified a procedure courts must employ to decide certification and notice issues under the FLSA. *Id.* (citing *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008)). Courts in this district generally follow a two-stage approach to determine whether potential class members are "similarly situated": a term that neither the FLSA nor its implementing regulations define, but that sets the standard for what plaintiffs must demonstrate for opt-in notice to issue. *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 4464887, at *1 (N.D. Ill. Sept. 27, 2012); *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011) (citing *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010)).

In the first stage, courts employ a "lenient interpretation" of the term "similarly situated," *Madden*, 2009 WL 4757269, at *1, and require only "a minimal showing of similarity." *Nehmelman*, 822 F. Supp. 2d at 750 (citing *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL

140126, at *5 (N.D. Ill. Jan. 20, 2009)). The plaintiffs must make only "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Blakes v. Ill. Bell Tel. Co.*, No. 11 C 336, 2011 WL 2446598, at *2 (N.D. Ill. June 15, 2011) (citing *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)).

If a plaintiff makes the requisite showing at the first stage, a court may conditionally certify the class and authorize the plaintiffs to send notice of the case to the similarly situated employees, who then have an opportunity to opt-in as plaintiffs. *See Blakes*, 2011 WL 2446598, at *3; *Howard*, 2009 WL 140126, at *2; *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008). The parties then proceed to discovery related to the merits of the plaintiffs' claims. *Id.*

In the second stage, following the completion of the opt-in process and merits-related discovery, a defendant may move to decertify the conditional class. In that event, a court must reevaluate the conditional certification in a more stringent inquiry, *Camilotes v. Resurrection Health Care Corp.*, No. 10 C 366, 2012 WL 4754743, at *5 (N.D. Ill. Oct. 4, 2012), to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis. *Madden*, 2009 WL 4757269, at *2 (citing *Howard*, 2009 WL 140126; *Jirak*, 566 F. Supp. 2d at 848). At the second stage, the court reviews a number of relevant factors, including the disparate or shared factual and employment settings of the individual plaintiffs, the various defenses available to the defendant that may be individual to each plaintiff, and fairness and procedural considerations. *Russell v. Ill. Bell Tel. Co., Inc.*, 721 F. Supp. 2d 804, 811 (N.D. Ill. 2010) (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)). "These

factors help a court determine whether it can manage the case and bring about a fair and reasonably expeditious resolution of the collective action." *Id.*

## III.

This case is currently at stage one of the collective action analysis: the parties have done initial, opt-in discovery, and plaintiff has filed a motion for conditional certification. Thus, we employ a "lenient interpretation" of the term "similarly situated," and ask whether plaintiff has made "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Madden*, 2009 WL 4757269, at *1; *see also Blakes*, 2011 WL 2446598, at *2.

Here, plaintiff alleges that he and similarly situated plaintiffs were subject to a "longstanding and unwritten policy that members of the Bureau of Organized Crime will monitor and perform work on employer-issued BlackBerry devices while off-duty, but will not submit overtime slips or otherwise be paid for their labor" (doc. # 81: Pl.'s Reply at 5). Though CPD did not have a written policy or procedures governing off-duty BlackBerry use, plaintiff alleges that he and similarly situated employees were expected "to be available twenty-four [hours] per day via BlackBerry," and that they "felt obligated to respond to these email communications and telephone calls while off duty" because "a culture developed where police officers feel compelled to work for free in order to possibly gain promotion and/or maintain their coveted assignment in a specialized unit [BOC]" (Pl.'s Mem. at 13-14).

## A.

Defendant argues that this Court should deny plaintiff's motion for conditional certification because contrary to plaintiff's claims, the evidence shows that "the City's written policy and practice is to compensate its police officers, including Plaintiff, for time worked in accordance with, and in most cases more generously than what is required, by the FLSA" (doc. # 79: Def.'s Resp. at 1). CPD has a written policy for how police officers, including those assigned to BOC, should seek overtime compensation: officers submit a time due slip advising their immediate supervisor when they worked overtime beyond their normal duty hours; the supervisor must approve the slip; then the supervisor forwards it to a department official for timekeeping and payroll purposes (*Id.* at 3). Plaintiff's evidence, however, shows that in general, officers in BOC did not submit time due slips for off-duty BlackBerry use (*Id.* at 5, 11-12).

Defendant argues that this evidence alone should put an end to plaintiff's collective action claim (Def.'s Resp. at 11-14). However, this argument begs the question of whether there exists an unwritten practice or policy for BlackBerry use that runs contrary to CPD's general policy with respect to overtime. Defendant cites to the Sixth Circuit's recent holding that, "[u]nder the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012). In *White*, however, there was no evidence that the employer maintained an unwritten or informal practice of discouraging submission of requests for overtime for certain work.

Thus, *White* is not contrary to the case law recognizing that evidence of lawful written policies compensating for overtime work does not automatically defeat an FLSA claim where a

plaintiff presents "countervailing evidence" of a common policy of not paying for overtime. *Brand v. Comcast Corp.*, No. 12 C 1122, 2012 WL 4482124, at *5 (N.D. Ill. Sept. 26, 2012) (citing *Russell*, 575 F. Supp. 2d at 935). "[R]egardless of what a company's official policy says, some evidence that a separate policy is enforced by 'more than a rogue manager or two' supports a conclusion that similarly situated employees were subject to a common practice violating the FLSA." *Blakes*, 2011 WL 2446598, at *5 (quoting *Russell*, 575 F. Supp. 2d at 935).

Here, plaintiff does not dispute that CPD has an express policy that generally covers compensation for overtime work. However, plaintiff alleges that CPD had a different, "unwritten" policy that officers in BOC not receive compensation for overtime work using BlackBerries. Plaintiff alleges that because of this unwritten policy, officers did not turn in time due slips for off-duty use of their BlackBerries (Pl.'s Reply at 3). We therefore continue our inquiry and determine whether plaintiff has made a "modest factual showing" of the existence of an unwritten CPD policy and practice not to compensate employees for off-duty use of their department-issued BlackBerries. *Blakes*, 2011 WL 2446598, at *2; *but cf. Adair v. Wis. Bell, Inc.*, No. 08 C 280, 2008 WL 4224360, at*6-7 (E.D. Wis. Sept. 11, 2008) (denying conditional certification where the plaintiffs' statements suggested that supervisors had observed employees working unpaid overtime, but plaintiffs did not present evidence that the employer was aware of and permitted its employees to perform work outside of their hours without pay on a widespread basis).

**B.**

Though this is a lenient standard, the modest factual showing required at the first stage of the FLSA certification process "cannot be founded solely on allegations of the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or

other documents." *Nehmelman*, 822 F. Supp. 2d at 750 (internal citations and quotations omitted). We therefore turn to the evidence offered by plaintiff – largely through the depositions of eight CPD officers – to support his claim of an unwritten policy not to pay them for work done using their BlackBerries while off duty.

Two deponents – Sergeants Richards and Kirchner – testified that they were verbally instructed by their supervisors that they had an obligation to monitor their BlackBerries while off-duty (Pl.'s Mem., Ex. C: Kirchner Dep. at 14-18; Pl.'s Mem., Ex. G: Richards Dep. at 11). Five out of the remaining six deposed officers testified that their supervisors did not instruct them on what to do with their BlackBerries while off-duty, and that they in turn did not expressly instruct their subordinates on that issue either (*see* Pl.'s Mem., Ex. A: Allen Dep. at 26, 58-59; Pl.'s Mem., Ex. B: Daly Dep. at 17-18; Pl.'s Mem., Ex. D: Valdez Dep. at 13, 37; Pl.'s Mem., Ex. E: Waldera Dep. at 8, 20; Pl.'s Mem., Ex. F: Cervenka Dep. at 16, 18 ("may" have mentioned to subordinates that he expected them to respond)). The remaining deponent, Lieutenant George Devereux, stated that he had no understanding or knowledge of anything regarding off-duty BlackBerry use (Def.'s Resp., Ex. E: Devereux Dep. at 22).

Of the five officers whose supervisors did not specifically instruct them on off-duty BlackBerry use, four of them testified that they nevertheless understood or believed that they were expected to monitor their BlackBerries while they were off-duty, and they expected their subordinates to do the same (*see* Allen Dep. at 40; Valdez Dep. at 13, 18-19; Waldera Dep. at 8-9, Cervenka Dep. at 16-18). Lieutenant Daly – the one deponent who testified that he was not expected to monitor his BlackBerry while off-duty and he did not feel obligated to do so – nevertheless did monitor his BlackBerry while he was off-duty (*see* Daly Dep. at 19, 22-23). In addition, Lieutenant

Devereux testified that when he was off-duty, he "at times" had his BlackBerry with him because he did "whatever I have to do to get the job done in my position" (Devereux Dep. at 17-18).

None of the deponents were instructed by their supervisors on whether to submit time due slips for off-duty BlackBerry use, and they likewise did not instruct their subordinates on this matter. Seven out of the eight deponents never submitted overtime slips for off-duty use of their BlackBerry, and they never received overtime slips from their subordinates for off-duty use of their BlackBerry. Several of the deponents explained that they did not submit overtime slips because there was an expectation that monitoring their BlackBerry while off-duty was part of the job, *i.e.*, part of the responsibility that comes with having an elite position in a specialized, prestigious unit such as BOC (*See* Allen Dep. at 40-41; Valdez Dep. at 22-23, 37; Cervenka Dep. at 25-29). Lieutenant Waldera understood that if your boss emails you, even if you are off-duty, you are expected to respond (Waldera Dep. at 9). Sergeant Kirchner stated that he thought submitting an overtime slip for off-duty BlackBerry use would be frowned upon; he did not submit an overtime slip because he "liked his job" and his bosses (Kirchner Dep. at 25-26).

On the other hand, Lieutenant Cervenka testified that his off-duty use of his BlackBerry was minimal and did not warrant overtime, as it amounted to only five to thirty minutes occasionally (Cervenka Dep. at 25-29). Similarly, Lieutenant Daly did not submit an overtime slip for off-duty phone calls on his BlackBerry because he did not think a fifteen minute phone call was significant enough to put in for overtime (Daly Dep. at 20). Lieutenant Devereux testified that he was not a "bean counter" guy, so he also never submitted an overtime slip for off-duty BlackBerry use (Devereux Dep. at 32-33).

Only one deponent received compensation for any off-duty BlackBerry use. Sergeant Richards testified that he was compensated for after-hours "call-outs" while he was working in the Asset Forfeiture division of BOC (Richards Dep. at 36-38). Where $10,000.00 or more was seized, the Asset Forfeiture investigator would call him, even while he was off-duty, to direct the investigation (*Id.* at 37). Sergeant Richards would submit an overtime slip for a minimum of one hour for that BlackBerry work, and if he was called out to the scene, he would submit an overtime slip for more than one hour (*Id.* at 37-38). When Sergeant Richards made these submissions, he was never denied overtime pay (*Id.* at 62-63).

**C.**

Plaintiff argues that conditional certification is warranted because he has made the necessary "modest" or "minimal" factual showing that he and similarly situated BOC officers were subject to a common policy that violated the FLSA. We agree, as the vast majority of recent FLSA collective action lawsuits in this District have held that the plaintiffs meet their stage one burden with less factual support than Sergeant Allen presents here.

In *Madden*, 2009 WL 4757269, at *4, for example, the district court held that the plaintiffs satisfied their modest burden of demonstrating a common policy or plan where the two named plaintiffs provided affidavits attesting that the defendant engaged in an informal, unwritten policy that violated the FLSA. Similarly, in *Brand*, 2012 WL 4482124, at *5-6, the court held that the affidavits of five opt-in plaintiffs plus the named plaintiff was sufficient to provide the modest factual showing that they and other similarly situated plaintiffs (at the particular facility where they worked) were subject to a common, unwritten policy that violated the FLSA. *See also, e.g., Blakes*, 2011 WL 2446598, at *3-4 (granting motion for conditional certification where declarations of the

seven named plaintiffs alleged that the defendant company subjected them and other potential plaintiffs to an unofficial, common practice that violated the FLSA); *Nehmelman*, 822 F. Supp. 2d at 748-49 (granting motion for conditional certification where declarations of the named plaintiff and four additional former employees of the defendant showed that the defendant subjected them to a common policy that violated the FLSA); *Jirak*, 566 F. Supp. 2d at 849 (deposition testimony and declarations were sufficient evidence at stage one that the potential plaintiffs were subject to a common policy that violated the FLSA).

Defendant cites one case from this district that denied conditional certification. In *Flores*, 289 F. Supp. 2d at 1046, the district court denied conditional certification because it held that the affidavits of two plaintiffs was not enough to make even a modest showing of a common policy that violated the FLSA. The language of that case leaves open, however, whether the plaintiff could have satisfied his minimal burden with the presentation of more than two affidavits out of a potential class of fifty. *See Id.* The amount of evidence plaintiff offers here surpasses that which was before the court in *Flores*.

Defendant also cites to numerous cases from outside of this district denying conditional certification because of the lack of a common policy or practice, but these cases are less persuasive than those in our own district, and they are also distinguishable. *See, e.g.*, *Castle v. Wells Fargo Fin., Inc.*, No. 06-4347, 2008 WL 495705, at *2 (N.D. Cal. Feb. 20, 2008) (plaintiffs' evidence suggested that practices regarding employees' overtime hours differed depending on the branch or manager); *Velasquez v. HSBC Fin. Corp.* 266 F.R.D. 424, 431 (N.D. Cal. 2010) (evidence from eleven former employees out of 10,000 employees around the country did not show common policy where employer submitted eighty-three declarations showing employees were not required to work

off-the-clock); *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-CV-592-FDW-DSC, 2011 WL 4351631, at *7 (W.D. N.C. Sept. 16, 2011) (finding no company wide policy violating FLSA where defendant submitted 26 declarations showing otherwise); *Bishop v. Petro-Chemical Transp., LLC*, 582 F. Supp. 2d 1290, 1295 (E.D. Cal. 2008) (the plaintiff truck driver's declaration did not include any evidence that other similar situated drivers were not paid for their overtime work); *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-738, 2012 WL 334038, at *3, 5 (S.D. Tex. Feb. 2, 2012) (the plaintiff's evidence showed managers had little or no knowledge of subordinates' alleged off-the clock work activities, and there was no evidence that managers acted uniformly nationwide in failing to follow written overtime policies); *Adair*, 2008 WL 4224360, at *6 (declarations of three named plaintiffs did not support modest showing that employer had common policy violating FLSA for its employees at four separate call centers).

Here, plaintiff has made a modest factual showing that Sergeants and Lieutenants in the BOC believed that they were expected to check and possibly respond to emails and calls made to their department-issued BlackBerries while they were off-duty without being compensated for these activities. Although one of the eight deponents in this case, Sergeant Richards, testified that he was compensated for at least some overtime work done on his BlackBerry, he did not submit overtime slips for other off-duty uses of his BlackBerry (*see* Richards Dep. at 30-31, 54-56). "At this stage, the court is tasked with determining whether it can 'envision a scenario' where [the plaintiff] and potential collective action members are similarly situated." *Brand*, 2012 WL 4482124, at *5 (quoting *Persin v. CareerBuilder, LLC*, No. 05 C 2347, 2005 WL 3159684, at *1 (N.D. Ill. Nov.23, 2005)). Plaintiff has presented sufficient evidence for us to envision such a scenario.

IV.

Defendant also contends that this case is not suitable for a collective action, and thus should not receive conditional certification, because the Court would have to conduct fact-intensive, individualized determinations on liability issues since officers in BOC worked on different teams, for different supervisors, and performed different job responsibilities (Def.'s Resp. at 1, 15). Plaintiff disputes that the case presents fact-intensive, individualized inquiries, and he contends that common, readily available, sources of evidence can be used to prove his claims, including department payroll records and Verizon telephone and data records for the BlackBerries (Pl.'s Mem. at 14).

Plaintiffs are not required "to show that the potential class members have identical positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay." *Alexander v. Caraustar Indus., Inc.*, No. 11 C 1007, 2011 WL 2550830, at *2 (N.D. Ill. June 27, 2011) (quoting *Jirak*, 566 F. Supp. 2d at 848-49). Indeed, "[t]hat plaintiff's FLSA claims may later require a more individualized inquiry does not preclude authorizing notice of their claims at this first stage." *Brand*, 2012 WL 4482124, at *6 (internal citations omitted). Further discovery may reveal that a collective action would be "unmanageable, [but] such a possibility does not mean that notice may not issue at step one." *Id.*

BOC is composed of five divisions – Asset Forfeiture, Gang Enforcement, Gang Investigation, Intelligence, and Narcotics – each with multiple sections, specialized job

responsibilities, different supervisors, and different work environments (Def.'s Resp. at 6).[4] Defendants contend that the differing job responsibilities and supervisors resulted in a significant amount of variation in off-duty BlackBerry use within BOC, such that the putative plaintiffs are not similarly situated (*Id.* at 7, 9, 17-18). And, defendant contends that the type of off-duty BlackBerry usage among BOC officers varied greatly in: the frequency and length of off-duty, work-related phone calls; the need for immediate, delayed, or no response to emails received while off-duty; and the length of time required to respond to emails that needed an immediate response (*Id.* at 9, 16-17).

Plaintiff responds that while the amount of overtime officers spent on their department-issued BlackBerries may have varied, the policy that allegedly violated the FLSA did not vary: the policy of not granting overtime compensation for off-duty work on BlackBerries (Pl.'s Reply at 3-4). "If common questions predominate, the plaintiffs may be similarly situated even though the recovery of any given plaintiff may be determined by only a subset of those common questions." *Alvarez*, 605 F.3d at 459. At this early stage, we agree that plaintiff has met his minimal burden to offer evidence that BOC officers with department-issued BlackBerries were subject to a common policy that did not provide overtime compensation, in violation of the FLSA.

Moreover, defendant's arguments regarding the variation in off-duty BlackBerry usage – including the possibility that the usage was no more than *de minimis* or was offset by "rank credit" or other "premium payments" under the CBA – is a matter of the proof of the merit, *vel non*, of

---

[4]Defendant notes that plaintiff's evidence to date has only included deponents from Asset Forfeiture, Gang Investigation, and Narcotics, and police officers with the rank of sergeant or above (Def.'s Resp. at 2 n.1). Defendant, however, does not ask the Court to further limit the proposed class, but rather to deny entirely plaintiff's motion for conditional certification. Moreover, defendant has offered no evidence that the treatment of off-duty use of CPD-issued BlackBerries is different in the Intelligence and Gang Enforcement divisions than in the other divisions of BOC.

plaintiff's claim. *See Allen*, 2011 WL 941383, at *5-6.[5] It is premature to consider those arguments at this time. *See Nehmelman*, 822 F. Supp. 2d at 760-61 (the court does not resolve arguments regarding the viability or applicability of the *de minimis* doctrine at stage one of the conditional certification analysis, so long as it does not defeat the plaintiff's showing of a factual nexus with members of the putative collective action); *see also Blakes*, 2011 WL 2446598, at *5 (holding that questions of how often each class member worked more than 40 hours per week without payment, why class members did not report compensable time, and whether their supervisors knew they were working off-the-clock were not questions to determine at conditional certification stage); *Alexander*, 2011 WL 2550830, at *2 (holding that the defendants' argument that overtime worked by the plaintiffs was offset by a paid thirty-minute daily lunch period was more appropriately considered at summary judgment).[6]

At the first stage, despite the potential variations in or *de minimis* use of the department-issued BlackBerries, the Court can "envision a scenario" where the Plaintiffs and potential class members are similarly situated. *Blakes*, 2011 WL 2446598, at *5. Accordingly, we find that

---

[5]The *de minimis* doctrine is a defense that "allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011); *see also* 29 C.F.R. § 785.47 (FLSA implementing regulation which states that "[i]n recording working time . . . insubstantial . . . periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. . . . This rule applies only where there are uncertain ... periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. . . .").

[6]The cases defendant cites in which courts have denied conditional certification because of the need for fact-intensive, individualized determinations are distinguishable. *See, e.g.*, *Reich v. Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009, 1012-13 (N.D. Ind. 2005) (determining whether any worker qualifies as a loader and therefore exempt from the FLSA will require a highly individualized, fact-specific inquiry into the individual's specific duties); *Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888, at *3 (N.D. Ill. Feb. 8, 2000) (determination of who was an independent contractor and who was an employee would require fact-intensive, individual determinations as to the nature of each potential claimant's employment relationship with the defendant and other employers); *see also Camilotes*, 2012 WL 4754743, at *4-5 (applying the second stage's "more stringent" inquiry in granting the defendant's motion to decertify).

plaintiff has satisfied his minimal factual burden, and we grant plaintiff's motion for conditional certification.[7]

## CONCLUSION

For the foregoing reasons, we grant plaintiff's motion for conditional certification of a collective action under the FLSA (doc. # 66). We deny plaintiff's request to approve the form of notice and consent attached to the motion. Defendant has objected to that form, without proposing an alternative (Def.'s Resp. at 2); plaintiff has agreed to work with defendant to modify the notice and consent in an effort to reach agreement on the forms (Pl.'s Reply at 8). We therefore direct the parties to meet and confer and, by January 31, 2013, file a joint document proposing the form of notice and consent. To the extent the parties disagree on the forms, they shall set forth their disagreements (and their respective proposals) in the joint document.

Despite plaintiff's ability to survive stage one of the FLSA collective action question, we reiterate our questions "about the ability to treat on a class basis the broad range of situations in which police personnel may 'respond' to messages that are sent to them on PDAs, the extent to which those responses might constitute 'work,' and the extent to which any work might not be compensable because it is '*de minimis*.'" *Allen*, 2011 WL 941383, at *5. We also harbor doubts as to how plaintiff will determine the extent of some of the alleged off-duty BlackBerry "work," such as the amount of time an officer spent monitoring emails on a BlackBerry versus reading or

[7]Defendant also argues that plaintiff has failed to demonstrate that any putative class member is interested in joining the suit, which was filed over two years ago (Def.'s Resp. at 2, 19-20). This argument, too, is premature. Contrary to defendant's arguments, at stage one of the conditional certification process, courts in this district generally do not require a plaintiff to produce evidence that other employees desire to join the collective action. *See, e.g.*, *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007) (holding that requiring a plaintiff to produce evidence that other employees wish to join the class before class notice is sent would "put[] the cart before the horse" and undermine the "broad remedial goal" of the FLSA).

responding to emails while off-duty (when people regularly receive hundreds of emails at all hours, and where the officers were allowed "limited personal use" of their CPD-issued BlackBerries (*see* Pl.'s Mem. at 2)). That said, we leave these concerns for another day.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: January 14, 2013**