**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY ALLEN, Individually and on behalf of other similarly situated employees of the Chicago Police Department, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 10-CV-03183 |
| vs. | ) ) | Magistrate Judge Schenkier |
| CITY OF CHICAGO, | ) ) ) | |
| Defendant. | ) | |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S
MOTION TO DECERTIFY COLLECTIVE CLASS**

---

Dated: August 7, 2014

Paul D. Geiger (#6210743)
Ronald C. Dahms (#6289304)
Sean C. Starr (#6304070)
Attorneys for Plaintiffs
135 South LaSalle Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 609-0060
Facsimile: (312) 541-8991

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES..............................................................................................iii

INTRODUCTION ..........................................................................................................1

ARGUMENT ................................................................................................................2

I.    The Collective Class Should Not be Decertified because Plaintiffs are Similarly
Situated Employees that Share a Common Identifiable Factual Nexus ..........................5

    A.    Plaintiffs have Presented Evidence that they are Similarly Situated
Employees because all Members of BOC Shared the Common Goal of
Combating Organized Crime................................................................................5

    B.    Plaintiffs have Presented Evidence that they are Similarly Situated
Employees by Demonstrating a Uniform BOC Policy Existed that Denied
Overtime Compensation for Off-Duty Work Performed on BlackBerry
devices..........................................................................................................10

        1.    Plaintiffs Were Uniformly Issue Hand-Held BlackBerry Devices
and Instructed to be Responsive to them at all times...........................12

        2.    Plaintiffs Were Uniformly Constrained by BOC's Unspoken and
Unwritten Police from Seeking Compensation for Off-Duty work
Performed on their BlackBerrys ........................................................13

        3.    On Paper, CPD General Orders Required them to Seek
Compensation. In Practice, Plaintiffs Were Uniformly Unable to
Do So...............................................................................................14

II.    The Collective Class Should Not be Decertified because Plaintiffs are Similarly
Situated Employees and thus, any Individualized Determinations that may be
Necessary are Insignificant .........................................................................................17

    A.    Individualized Determinations Regarding Liability and Damages are not
Significant Enough to Decertify the Class...........................................................18

    B.    Individualized Determinations Regarding the City's Affirmative Defenses
are not Significant Enough to Warrant Decertification ....................................20

    C.    In the Alternative, if the Court Determines that the Individualized
Determinations are Significant Enough, It should Apply the Sub-Claim
Approach .........................................................................................................22

i

III.   Certification of the Collective Class is Further Warranted by Issues of Fairness and Procedural Concerns.................................................................................23

     A.   Certification of Plaintiffs' Collective Class Promotes Fairness..........................23

     B.   Limited Procedural Concerns do not Warrant Decertification of Plaintiffs' Collective Class ................................................................................................24

CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Alvarez v. City of Chicago,*
  605 F.3d 445 (7th Cir. Ill. 2010)..........................................................................*passim*
*Brennan v. Qwest Communs. Int'l,*
  2009 U.S. Dist. LEXIS 47898 (D. Minn. June 4, 2009)................................6
*Camilotes v. Resurrection Health Care Corp.,*
  286 F.R.D. 339 (N.D. Ill. 2012). ........................................................6,9,10,20
*Chabrier v. Wilmington Fin., Inc.,*
  2008 U.S. Dist. LEXIS 27761(E.D. Pa. Apr. 4, 2008) ...........................22,23
*Driver v. Appleillinois, LLC,*
  2013 U.S. Dist. LEXIS 154773 (N.D. Ill. Oct. 29, 2013)...........................20
*Espenscheid v. DirectSat USA, LLC,*
  705 F.3d 770 (7th Cir. 2013)..............................................................19,20,25
*Frank v. Gold'n Plump Poultry, Inc.,*
  2007 U.S. Dist. LEXIS 71179 (D. Minn. Sept. 24, 2007)...........................20
*Fravel v. County of Lake,*
  2008 U.S. Dist. LEXIS 51717 (N.D. Ind. July 7, 2008).............................23
*Howard v. Securitas Sec. Servs.,*
  2009 U.S. Dist. LEXIS 3913 (N.D. Ill. Jan. 20, 2009 ................................11
*Madden v. Corinthian Colleges, Inc.,*
  2009 U.S. Dist. LEXIS 115331 (N.D. Ill. Dec. 8, 2009).........................18,19
*Moss v. Crawford & Co.,*
  201 F.R.D. 398 (W.D. Pa. 2000).................................................................20
*Mielke v. Laidlaw Transit, Inc.,*
  313 F.Supp.2d 759 (N.D. Ill. 2004).........................................................11,23
*Russell v. Ill. Bell Tel. Co.,*
  721 F.Supp.2d 804 (N.D. Ill. 2010).......................................................*passim*
*Strait v. Belcan Eng'g Group, Inc.,*
  911 F.Supp.2d 709 (N.D. Ill. 2012).........................................................23,24
*Vennet v. Am. Intercontinental Univ. Online,*
  2005 U.S. Dist. LEXIS 45344 (N.D. Ill. Dec. 22, 2005)...............................5
*Urnikis-Negro v. Am. Family Prop. Servs.,*
  616 F.3d 665 (7th Cir. 2010).......................................................................19

### INTRODUCTION

The Chicago Police Department ("CPD") issued Plaintiffs hand-held BlackBerry devices because CPD wanted Plaintiffs accessible twenty-four (24) hours a day, seven (7) days a week, 365 days a year. The reason Plaintiffs were expected to give up their personal autonomy, unlike other Chicago Police Officers, was that Plaintiffs are or were all members of CPD's highly specialized Bureau of Organized Crime ("BOC"). CPD perpetuates the idea that the collective success of BOC is inexplicably dependent upon the individual sacrifice of its members. So much so that Plaintiffs worked under the mistaken belief that they had to use their BlackBerrys to answer and respond to telephone, text, and email messages without compensation while off-duty. An undocumented and often unspoken BOC policy existed that required as much; or so Plaintiffs were uniformly led to believe.

Mirroring the fundamental structure of organized crime itself, BOC is comprised of fluid, interchangeable parts dedicated to a common goal. As such, BOC is divided into four divisions, each with the shared focus of stopping illegal narcotics, gangs, and vice activities. These divisions are amorphous by nature in that the police duties and factual settings of each overlap and reinforce one another. BOC employs both street-level enforcement efforts and long-term criminal investigations utilizing a host of technology. Plaintiffs were given BlackBerrys and told to keep them turned on and within arms' length in furtherance of CPD's goals. Regardless of which BOC division Plaintiffs worked in, their job duties were inherently similar. Each Plaintiff possessed specialized skills aimed at counteracting organized crime. Each Plaintiff worked in concert with both a smaller team of law enforcement officers and BOC as a whole. Each used their BlackBerrys to communicate instantaneously with other BOC members in order to combat organized crime. Each Plaintiff was subject to a unique BOC culture that cultivated the idea that

BOC members and their job responsibilities were different from the rest of CPD.

That culture developed Plaintiffs' belief that in exchange for their dedication, their esteemed positions came with intangible rewards.  Across the board, Plaintiffs felt special and proud to be part of BOC.  However, Plaintiffs also possessed a distinct understanding that their continued assignment to BOC was dependent upon meeting certain high expectations.  In addition to personal achievement, Plaintiffs were financially compensated for their work in the form of an hourly salary and, for many, significant overtime pay.  While CPD policy did compensate Plaintiffs for overtime when Plaintiffs were physically at work, CPD never intended to compensate them for the time Plaintiffs spent performing work on their BlackBerrys while off-duty.  A uniform, undocumented policy existed internally within the ranks of BOC that discouraged Plaintiffs from ever attempting to seek compensation for the numerous off-duty hours they spent working via their BlackBerry devices.

## **ARGUMENT**

Decertification is wholly inappropriate because Plaintiffs are similarly situated employees.  While the City would have this Court believe that the "day has arrived" to decertify the Plaintiffs' collective class, case law says otherwise.  *Defendant's Motion for Decertification at 1 (Def. Mtn")*.  District courts within the Seventh Circuit have clearly established that decertification is inappropriate in circumstances where similarly situated employees are subject to a uniform policy of unlawful practice.  Such is the case for the collective class here.

In order for this Court to find Plaintiffs similarly situated, this Court need simply determine that some factual nexus exists to bind Plaintiffs together as victims of the City's policy or practice of denying them overtime pay.  Plaintiffs' shared factual nexus is largely self-evident.  Plaintiffs are or were all members of BOC, a highly specialized CPD unit with the goal of

combatting organized crime. In order to successfully achieve that goal, Plaintiffs were told by their superiors that they needed to be accessible at all times. To make this possible, all supervising members and a small number of police officers within the BOC were given hand-held BlackBerry devices.

In step with the issuance of the BlackBerrys was the development of a uniform policy applied to all Plaintiffs that forms the basis of this litigation. In this case, CPD propagated the notion that BOC was different than the rest of CPD and as such, Plaintiffs need be available to perform work at any time duty called. Because of BOC's unique nature and the scope of the obligation that came with a BOC position, it was further impressed upon Plaintiffs that off-duty work performed solely on their BlackBerrys was not compensable and should not be submitted as overtime. According to numerous Plaintiffs, there was a widespread understanding that submitting overtime for off-duty work performed on a BlackBerry was just something that BOC members simply were not supposed to do. This work consisted of answering work related phone calls at all hours of the day and night, on weekends, personal days, regular days off, or while on vacation; sending and receiving text messages at all times of the day, and reading and responding to emails on a consistently regular basis, all of which BOC deemed not compensable.

The City still does not want to compensate these Plaintiffs for the work they performed, thus its attempt to decertify the collective class. However, if this Honorable Court finds the Plaintiff class similarly situated, any individualized determinations that may be necessary are insignificant. Not surprisingly, the City's motion completely fails to address *Russell v. Ill. Bell Tel. Co.*, 721 F.Supp.2d 804 (N.D. Ill. 2010). Instead, the City relies primarily on district court decisions outside of the Seventh Circuit in its Motion.[1] *Russell* is highly relevant because it is

---

[1] The City's Motion cites to twelve (12) non-binding decisions and eight (8) Seventh Circuit cases, as well as one Supreme Court decision.

most analogous to the instant case. The *Russell* court certified a collective action on behalf of employees who worked in similar positions during a three-year period and who did not receive pay for time spent working off the clock. *Id.* The defendant employer in *Russell* claimed many of the same arguments as the City does against Plaintiffs here. The court granted the employer's decertification motion only as it applied to the employees identified by discovery, whose individualized claims did not fall under certain subclasses. However, the court granted certification for the employee subclasses that established that they were subjected to common policies or practices that deprived them of overtime pay, in violation of the FLSA. *Id.* Russell established the proposition that certification is appropriate, even in circumstances where individualized questions and circumstances exist, if a factual nexus of common questions predominate. *Id.* at 812.

Contrary to the City's position, the common questions that exist among Plaintiffs make any individualized questions and circumstances inconsequential. This strong factual nexus binds Plaintiffs together as victims of the City's FLSA violation. Any individualized factual determinations needed for damages computations are nothing more than a negligible, albeit laborious, task insufficient to warrant decertification. Likewise, the City's defenses should not be individually applied to the Plaintiffs. While the City argues that a range of different defenses would apply to a range of different Plaintiffs, this is simply not the case.

Certification promotes a degree of judicial economy and fairness that must be recognized. This court "has wide discretion to manage collective actions." *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. Ill. 2010). The City asks this Court to decertify because of "fairness" and "procedural concerns." However, in reality, splintering the collective class would do nothing more than increase both parties' costs and clog the court system with duplicitous claims. The

whole point of certification is to avoid overly burdensome and redundant litigation that disadvantages both plaintiffs and defendants. Decertification of Plaintiffs' collective class would bog down the Federal District Court for the Northern District of Illinois with numerous common claims, each requiring much of the same evidentiary proofs

I. **The Collective Class Should Not be Decertified because Plaintiffs are Similarly Situated Employees that Share A Common Identifiable Factual Nexus**

Plaintiffs are similarly situated employees because they share common job duties and job related settings. In particular, as members of BOC, all Plaintiffs shared the common goal of combatting organized crime and all were issued hand-held BlackBerry devices to achieve that goal. Similarly BOC applied a uniform policy that denied overtime compensation for the off-duty work Plaintiffs performed on the BlackBerry devices.

In order for Plaintiffs to defeat the City's Motion for Decertification, they must "demonstrate[ ] similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present." *Russell*, 721 F.Supp.2d at 812 (citing *Vennet v. Am. Intercontinental Univ. Online*, No. 05-4889, 2005 U.S. Dist. LEXIS 45344, 2005 WL 6215171, at *6 (N.D. Ill. Dec. 22, 2005)). Plaintiffs can demonstrate that they are similarly situated by showing that "common questions predominate . . . even though the recovery of any given plaintiff may be determined by only a subset of those common questions." *Alvarez,* 605 F.3d at 449. Thus, while Plaintiffs must show they shared "a factual nexus, plaintiffs in a FLSA collective action need not be situated identically." *Russell*, 721 F.Supp.2d at 812.

A. **Plaintiffs have Presented Evidence that they are Similarly Situated Employees because all Members of BOC Shared the Common Goal of Combating Organized Crime**

5

Plaintiffs are similarly situated because, as members of the BOC, they performed similar duties in similar factual settings in their attempts to combat organized crime. When "analyzing Plaintiffs' factual and employment settings, Courts typically consider such factors as location, job duties, supervision, and policies or practices that bind the plaintiffs' claims together." *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 346 (N.D. Ill. 2012). However, on a motion for decertification, "the only determinative issue is whether Plaintiffs' job duties were similar." *Russell*, 721 F. Supp. 2d at 815 (citing *Brennan v. Qwest Communs. Int'l*, 2009 U.S. Dist. LEXIS 47898 at *5 (D. Minn. June 4, 2009)).

Plaintiffs' job duties were inherently similar. Ultimately, the primary duty of BOC is to protect the people of Chicago by reducing organized crime.[2] In furtherance of this, BOC employs highly specialized police officers and assigns them to various teams within various divisions with various names.[3] While BOC titles and designations have changed multiple times during Plaintiffs' employment, most changes were merely a matter of "semantics."[4] Each Plaintiff worked either in the Gang, Narcotics, Vice, or Asset Forfeiture Division, but their job duties were inherently similar.[5] Each Plaintiff, in some capacity, regularly worked to cultivate

---

[2] *See, e.g.* Defendant's Exhibit P, Deposition Transcript of Sergeant James Fiduccia ("Fiduccia") at 16:18;
[3] *See generally* Defendant's Exhibit H, Deposition Transcript of Sergeant Ricardo Herrera ("Herrera") at 23:14-24; Defendant's Exhibit N, Deposition Transcript of Sergeant James Corlett ("Corlett") 37:5-11;49:4-22; 88:19-89:1; Defendant's Exhibit O, Deposition Transcript of Lieutenant Nathan Hamilton ("Hamilton") at 39:14-23, 52:3-54:18, 59:21-60:9; Defendant's Exhibit B, Deposition Transcript of Sergeant George Karuntzos ("Karuntzos") at 14:13-16:20, 39:6-39:11; Defendant's Exhibit L, Deposition Transcript of Sergeant Mauricio Inzerra ("Inzerra") at 10:22-11:5, 21:20-22:2, 38:10-20, 79:6-81:5; Defendant's Exhibit A, Deposition Transcript of Chief Nicholas Roti ("Roti") at 49:13-18; Plaintiffs' Exhibit U, Deposition Transcript of Sergeant James Washburn ("Washburn") at 81:23-82:22; Plaintiffs' Exhibit V, Deposition Transcript of Sergeant Jeffrey Allen ("Allen") at 41:9-13; Plaintiffs' Exhibit W, Deposition Transcript of Lieutenant Brian Daly ("Daly") at 49:7-24, 50:22-23; Plaintiffs' Exhibit X, Deposition Transcript of Sergeant Mark Richards ("Richards") at 58:23-59:20; Plaintiffs' Exhibit Y, Deposition Transcript of Lieutenant Robert Cervenka ("Cervenka") at 21:12-17, 25:15-19; Fiduccia at 11:16-12:22;
[4] *See, e.g.* Defendant's Exhibit M, Deposition Transcript of Sergeant Darrell Spencer ("Spencer") at 14:17-15:1; Defendant's Exhibit I, Deposition Transcript of Sergeant James Padar ("Padar") 47:3-9; Washburn 53:18-54:2;; Plaintiffs' Exhibit Z, Deposition Transcript of Lieutenant Thomas Waldera ("Waldera") at 24:17-24; Corlett at 8:11-13, 9:10-20; Roti at 47:5-11, 49:13-18; Richards at 62:13-15; Fiduccia at 23: .9
[5] *See generally* Defendant's Exhibit C, Deposition Transcript of Sergeant Marlene Laurich ("Laurich") at 13:15-18; 53:13-17; Defendant's Exhibit J, Deposition Transcript of P.O. Vincent Mancini ("Mancini") at 12:5-14, 23:8-22,

informants and or acquire time sensitive informative and then, in turn, utilize that information to create and implement organized crime fighting strategies in concert with other members of BOC.[6] On a very frequent basis, the gathering and dissemination of that information occurred off- duty via BlackBerry devices.

Plaintiffs' most essential job duty stems from the fact that BOC traffics in information. Whether it concerns cultivating and harvesting information from confidential sources and other law enforcement agencies or communicating that information to BOC members that act upon it, Plaintiffs' most fundamentally similar job duty is information management.[7] Fundamental to this is the efficient and immediate exchange of information, hence the Department issued BlackBerrys. Criminals involved in organized crime do not keep regular business hours, and as a result, neither can BOC. Plaintiffs' job duties encompass everything from surveillance[8] and undercover work[9] to search warrants[10] and street level enforcement.[11] However, unlike the rest of CPD, Plaintiffs performed highly specialized job duties. BOC members' job duties are "totally different than a policeman in a uniform"[12] in that a great deal of their duties and

---

57:16: 58:8; Defendant's Exhibit K, Deposition Transcript of Sergeant Sean Martin ("Martin") at 10:6-11:13; Corlett at 8:11-13; 9:10-20: Padar at 47:3-9; Richards at 62:13-15; Spencer at 41:14-42:3, 87:7-88:15; Washburn at 14:2-15, 17:3-18:4, 53:18-54:2; Fiduccia 12:8-13. Similar to the Plaintiffs in *Russell*, all the Plaintiffs in this case have similar job duties across four divisions; accordingly, "such differences among plaintiffs do not justify decertification here."
721 F. Supp. 2d 804, 811 (N.D. Ill. 2010)
[6] *See e.g.* Defendant's Exhibit R, Deposition Transcript of Sergeant Lawrence Stec ("Stec") at 17:19-18-7; Corlett 25:1-20; Mancini 53:9-13; Karuntzos at 87:22-89:11; Spencer at 52:9-21, 61:17-21; Inzerra at 15:3-2, 28:11-24, 29:19-30:6, 60:5-14, 120:15-22: Martin at 109:6-16;, 37:4-19; Padar at 55:12-56:13; Fiduccia at 105:13-23.
[7] See e.g. Fiduccia at 15:21-16:16; Herrera at 17:4-18:11, 21:14-23; Williams at 57:18-23, 23:16-19; Mancini at 53:9-13, Karuntzos at 87:22-89:11; Spencer at 52:9-21, 61:17-21; Inzerra at 15:3-21, 71:1-20, 120:15-22; Stec at 17:19-18:7.
[8] *See e.g.* Fiduccia at 1620-17:23;Karuntzos at 13:6-17, 25:14-21, 28:22-29:5, 31:24-32:7; Spencer at 18:19-19:23: Inzerra at 28:11-24, 71:1-20; Washburn at 15:2-13; Martin 17:5-18:12; Padar at 21:21-22:14; Allen at 35:13-17.
[9] *See e.g.* Defendant's Exhibit Q Deposition Transcript of Sergeant Brad Williams ("Williams") at 16:16-20; Herrera at 39:23-40:5; Inzerra at 28:11-24, 31:5-11; Roti at 72:8-20; Martin 16:21-17:3; Stec at 16:19-17:12; Padar 18:3-20, 21:21-22:14
[10] *See e.g.* Stec at 12:15-13:11; Padar at2 2:15-24:2, 55:12-56:13, Allen 29:10-15.
[11] *See e.g.* Herrera at 50:19-24; Laurich at 13:7-8, Corlett at 19:21-20:11; Roti at 23:16-24:1.
[12] *See e.g.* Williams at 52:18-53:7; Hamilton at 59:21-60:5; Karuntzos at 39:6-11; Spencer at 29:19-30:6; Roti 179:1-180:16; Washburn at 81:23-82:22; Richards at 58:23-59:20.

responsibilities occur outside of their regularly scheduled hours. Plaintiffs' duties were unique in that no other CPD member could realistically be cover Plaintiffs' exact duties and responsibilities while Plaintiffs were off-duty.[13]

In order to successfully develop relationships with confidential informants ("CIs") that engender valuable information used to combat organized crime, Plaintiffs needed to be available to those sources during off-duty hours. This means that, regardless of their regularly scheduled duty hours, Plaintiffs had to be available at *any hour* their CIs wanted to contact them.[14] The same applies to Plaintiffs' relationship with outside law enforcement.[15] When an outside source of any kind had pertinent, time sensitive information, Plaintiffs had no choice but to avail themselves to the source, regardless of whether they were on or off-duty.

Likewise, in order to successfully use the information gathered from sources, Plaintiffs were required to regularly disseminate and communicate the information to other BOC members during off-duty hours. Much of the information Plaintiffs typically acquired through sources required an immediate response.[16] If Plaintiffs were to wait to respond until they were on-duty, the time-sensitive information would be wasted and the delay would adversely impact ongoing investigations and the City as a whole.[17] Because of the sensitive nature of the work performed in BOC, Plaintiffs often needed to disseminate information to supervisors and subordinates while off-duty via their BlackBerry devices.

Furthermore, Plaintiffs performed their work in similar settings. Because BOC is a

---

[13] *See e.g.* Williams at 54:14-17.
[14] *See e.g.* Herrera at 18:6-11; Fiduccia at 50:17-21; Karuntzos at 35:18-37:10, 87:10-88:18; Spencer at 54:4-15; Inzerra at 23:11-24:14, 29:2-16, 53:1-17, Stec at 44:11-45:4; Allen at 29:16-23.
[15] *See e.g.* Williams at 52:19-53:1-7; Laurich at 22:16-22; 52:7-15; Mancini 25:16-24; Hamilton at 20:14-21:6; Karuntzos at 27:8-28:8, 54:20-55:7, 87:10-88:18; Spencer at 20:1-19; Inzerra at 18:22-19:19, 38:10-39:3; Martin at 52:9-53:2; Allen at 51:1-52:10; Richards at 58:23-59:20.
[16] *See e.g.* Fiduccia at 51:12-52:12; Herrera at 16:12-15
[17] *See e.g.* Herrera at 88:4-89:5; Mancini at 92:2-21, Karuntzos at 42:5-43, 87:10-88:18, 88:19-89:11; Inzerra at 29:19-30:6; 66:11-68:2, Washburn 115:2-11; Stec at 44:11-45:4; 92:10-93:8; Padar at 35:4-36:8; 55:12-56:11; Allen at 35:18-24.

8

highly specialized unit dedicated to combatting organized crime, Plaintiffs performed their job duties in a "City-wide" context and were not constricted to districts and beats like a typical Chicago Patrol Officer.[18]  While the BOC's central office is based out of Homan Square,[19] Plaintiffs' duties take them from "the wire room" to the "field."[20]  All of the work Plaintiffs now seek compensation for occurred in a similar context as well: while Plaintiffs were off-duty. Whether Plaintiffs were at home, out to dinner with their wives, at family functions, on vacation, or even *in the middle of testifying in their deposition in the instant case*, the nature of BOC work required they perform off-duty work on their BlackBerrys on a highly frequent basis.[21]

Unlike in *Camilotes*, Plaintiffs' job duties and employment settings were similar and they all were subject to the same policy regarding off-duty BlackBerry usage.  *Camilotes* involved "automatic time deductions for their meal breaks" and not off-duty work performed on BlackBerry devices.  *Camilotes*, 286 F.R.D. at 342.  Unlike the instant case, those plaintiffs conceded that no uniform employer policy applied to the entire class.  *Id.* at 348.  Furthermore, the *Camilotes* plaintiffs worked in "eight different hospitals and in 198 different departments within those hospitals during the relevant period. . . .[and] [w]ithin those different departments, Plaintiffs worked different shifts."  *Id.* at 346.  Likewise, each of the different hospital departments had different policies relevant to their respective plaintiffs.  *Id.*

In the instant case, Plaintiffs shared the same fundamental job duties and employment setting.  Just as significantly, the same uniform policy was in place that required all Plaintiffs to be available and responsive to their BlackBerrys at all times.  The policy did not differ within

---

[18] *See e.g.* Herrera at 30:14; Inzerra at 12:17-13:4; 26:17-20; Roti 46:14-17, Martin at 18:22-19:7.

[19] *See e.g.* Williams at 25:9-11; Herrera at 47:14-16; Spencer at 17:7-10; Martin 18:8-11; Stec at 20:11-16; Padar at 21:7-11.

[20] *See e.g.* Fiduccia at 19:2-6; Inzerra at 16:18-17:17; Stec at 20:19-21:21; Padar 48:19-50:1: Allen at 37:2-7.

[21] *See e.g.* Herrera at 141:22-142:5; Fiduccia at 26:12-14, 43:7-12; Williams at 69:1-9; Laurich at 59:18-21; Corlett at 75:6-14; Karuntzos 28:22-29:12; Spencer at 93:8-16, Inzerra at 29:2-16, 74:4-16; Washburn 68:23-70:22; Martin at 49:9-50:10; Richards at 26:1-12, 56:8-9.

BOC.  In sum, Plaintiffs' job duties and employment settings are significantly alike.  While

Plaintiffs were assigned to different divisions within the BOC, they all shared the common goal

of combatting organized crime.  More important, however, is the fact that the uncompensated

work each performed and the setting in which they performed it—acquiring and disseminating

information while off-duty—was predominantly one and the same.

Plaintiffs are likewise similarly situated because, as members of BOC, one of their

essential job duties involved acquisition of a BlackBerry device that each Plaintiff was required

to keep turned on and physically with them at all times.[22]  BOC issued each Plaintiff a

BlackBerry device to better achieve the BOC goal of combatting organized crime.[23]  Because of

the nature of the job and the time sensitive information that BOC deals in, Plaintiffs were

obligated to immediately respond to supervisors, subordinates, CIs, and other law enforcement

officers on a daily basis in order to effectively perform their job duties.[24]  The issuance of

BlackBerrys made this possible.

###    B.    Plaintiffs have Presented Evidence that they are Similarly Situated Employees by Demonstrating that a Uniform BOC Policy Existed that Denied Overtime Compensation for Off-Duty Work Performed on BlackBerry devices

Plaintiffs are similarly situated because a uniform policy applied to each that denied any

overtime compensation for off-duty work they performed on their BlackBerry devices.  Plaintiffs

should be considered similarly situated in circumstances where their claims "are unified by

common theories of defendants' statutory violations, even if the proofs of these theories are

---

[22]  *See e.g.* Corlett at 40:15-41:3; Hamilton 46:10-17; Karuntzos at 22:12-20; Spencer 53:24-54:14; Washburn at 70:2-22; Stec at 54:10-56:7; Padar at 90:5-14; Allen at 26:22-27:4; Daly at 20:20-21; Waldera at 16:15; Richards 15:7-8; 53:8-54:2

[23]  *See e.g.* Herrera at 74: 11-13; Williams at 44:20-24; Fiduccia at 38:9-15; Corlett at 49:4-22.

[24]  *See e.g.* Fiduccia at 142:20-143:21; Herrera at 28:18-23; Williams at 47:16- 24, 57:22-23; Corlett at 25:1-20, 26:17-27:1, 32:3-20, 37:5-11; 49:4-22; Karuntzos at 53:18-54:2, 89:19-90:24; Spencer at 38:5-39:1, 47:1-15, 50:14-51:14, 64:18-24; Inzerra at 18:22-19:19, 53:18-57:11, 62:18-68:2, Washburn at 47:11-49:11, 55:17-61:22; Stec at 44:11-45:4; Padar at 48:19-50:1; Allen at 35:18-24, 40:3-8, 69:4-9.

inevitably individualized and distinct." *Russell*, 721 F.Supp.2d at 807. Plaintiffs' deposition testimony in the case at bar is based on their personal experience and observation and thus, more than meets the threshold requirement that the City cites in *Mielke v. Laidlaw Transit, Inc.*,[25] and *Howard v. Securitas Sec. Servs., USA Inc.*,.[26] Here, BOC's policy discouraged Plaintiffs from submitting overtime compensation requests for off-duty worked performed on their BlackBerrys by institutionalizing the idea that any work performed off-duty on their BlackBerrys was not overtime work at all. This policy essentially relied on three significant factors: 1) Issuance of the BlackBerrys with either an explicit or implicit corresponding direction to keep the phone turned on and respond to any and all CPD communications;[27] 2) Behavioral constraints imposed by BOC and its culture, though unspoken and unwritten in form, which resulted in an implied or tacit understanding that off-duty worked performed on their BlackBerrys would not be compensated;[28] and 3) Formal written CPD Direct Orders that contradicted the unspoken BOC policy but also made the process of acquiring compensation for off-duty worked performed on their BlackBerrys untenable.[29] These three factors created a policy and practice that made being compensated for off-duty work performed on BlackBerrys devices basically impossible.[30]

---

[25] The City's citation to *Mielke* in its Motion for Decertification conveniently leaves out the word "generally" from its citation. It further neglects to mention that *Mielke* also stands for the proposition that even absent a showing of a uniform policy or practice, judicial economy can satisfy the requirements of certification. *Mielke*, 313 F.Supp.2d 759, 763 (N.D. Ill. 2004)

[26] The Court in this case struck certain declarant testimony regarding hearsay references to "others[']" experiences, knowledge, or motivations but found admissible "reasonable inferences or opinions grounded in the declarants' personal knowledge." *Howard*, 2009 U.S. Dist. LEXIS 3913, *14 (N.D. Ill. Jan. 20, 2009).

[27] *See e.g.* Valdez at 13:2-5; Corlett at 49:4-22; Mancini at 36:4-13, 43:15-44:24, 61:7-13; Karuntzos at 28:9-29:12, 87:10-88:18; Martin at 99:11-100:12; Stec at 37:4-19, 38:17-39:15, 56:8-24; Padar at 90:7-14; Allen at 40:3-8, 42:9; Waldera at 15:11, 25:1-2; Richards at 11:1-5; 23:10-13, 26:1-12; Cervenka at 17:1-2, 18:7-11, 31:22;; Kirchner at 23:1-6.

[28] *See e.g* Laurich 66:1-67:3; Corlett at 36:11-18, 78:14-20, 91:5-22; Mancini at 43:15-44:24; Hamilton 49:6-12; Karuntzos at 33:24-34:21, 39:6-11, 103:16-104:14; Spencer at 29:19-30:6, 61:17-20, 65:7-13, 69:20-70:3; Inzerra at 118:17-120:22, Washburn 115:12-22, 121:17-122:23; Martin at 64:21-65:20; Stec at 57:6-18; Padar at 131:2-21; Allen at 95:17-96:15; Cervenka at 28:11-55; Valdez at 37:5-7.

[29] *Def. Exs. D, E and F,*

[30] The City makes much ado about Lt. Hamilton in its Motion. *Defs. Mtn at 10.* While the City's citation is incorrect (it should be 48:2-20), what is significant here is that Lt. Hamilton's testimony is an anomaly. No other Plaintiff submitted and was approved for multiple off-duty BlackBerry overtime requests. However, even in Lt.

### 1. Plaintiffs Were Uniformly Issued Hand-Held BlackBerry Devices and Instructed to be Responsive to them at all Times.

The first aspect of the uniform policy that denied Plaintiffs compensation for off-duty work performed on their BlackBerrys was BOC's issuance of the BlackBerrys. Whether a given Plaintiff was specifically told to keep his or her BlackBerry turned on, or a Plaintiff was simply made to understand that BOC involved twenty-four hour-a-day accessibility,[31] all Plaintiffs understood what being issued a BlackBerry meant. Some were specifically told to keep it with them.[32] Some Plaintiffs were specifically told that they were promoted to their BOC position because they would always answer their phone when contacted.[33] Other Plaintiffs were made aware through observation that not responding to their phones was not an option in BOC.[34] Still other Plaintiffs were admonished for not responding to their phones while off-duty.[35] Furthermore, Plaintiffs continued to be reminded that they need to keep their BlackBerrys on at all times by the fact that their supervisors and subordinates continued to contact them when

---

Hamilton's case, he submitted overtime requests on a small number of occasions and he only did so when his off-duty Blackberry work totaled more than two consecutive hours in length at a given time. Hamilton also testifies that he was not compensated for the countless times he spent less than two consecutive hours on his BlackBerry for work related purposes while off-duty. Hamilton does testify that he submitted overtime requests; however he also states that throughout his BOC career he set his own overtime and never needed approval for it, so much so that he considered himself "unique" within BOC. *See* Hamilton 27:12-24. Whether this was because of the nature of Hamilton's position as Lieutenant or the nature of his working relationship with Commanders Schmitz and Ryan remains to be seen. While Hamilton's testimony makes compensation for off-duty BlackBerry work theoretically possible for him, and only him, under certain circumstances, it in no way makes it the norm and is in no way consistent with the uniform BOC policy that applied to the rest of the collective class.

[31] *See e.g.* Defendant's Exhibit S, Deposition Transcript of Lieutenant Osvaldo Valdez ("Valdez") at 13:2-5; Plaintiffs' Exhibit AA, Deposition Transcript of Sergeant Robert Kirchner ("Kirchner") at 23:1-6; Corlett at 49:4-22; Mancini at 36:4-13, 43:15-44:24, 61:7-13; Karuntzos at 28:9-29:12, 87:10-88:18; Martin at 99:11-100:12; Stec at 37:4-19, 38:17-39:15, 56:8-24; Padar at 90:7-14; Allen at 40:3-8, 42:9; Waldera at 15:11, 25:1-2; Richards at 11:1-5; 23:10-13, 26:1-12; Cervenka at 17:1-2, 18:7-11, 31:22; Kirchner at 23:1-6; Herrera at 160:13-161:5.

[32] *See e.g.* Defendant's Exhibit S, Deposition Transcript of Lietenant Osvaldo Valdez ("Valdez") at 13:2-5; Fiduccia at 38:16-20; Corlett at 49:4-22; Mancini at 36:4-13, 43:15-44:24, 61:7-13; Karuntzos at 28:9-29:12, 87:10-88:18; Martin at 99:11-100:12; Stec at 37:4-19, 38:17-39:15, 56:8-24; Padar at 90:7-14; Allen at 40:3-8, 42:9; Waldera at 15:11, 25:1-2; Richards at 11:1-5; 23:10-13, 26:1-12; Cervenka at 17:1-2, 18:7-11, 31:22; Kirchner at 23:1-6.

[33] *See e.g.* Herrera at 18:16-22; Allen at 41:5-7; Waldera at 25:15-22; Cervenka at 27:21-28:15.

[34] *See e.g.* Williams at 81:9-11; Corlett 87:15-22,Stec at 38:17-39:15: Allen at 41:9-13; Cervenka at 17:9.

[35] *See e.g.* Laurich at 75:15-76:22; Spencer at 38:5-39:1; Allen at 42:20-21; Richards 29:13-21; Cervenka at 26:10-11, 31:9-22; Kirchner at 23:4-20

Plaintiffs were off-duty.[36]  Regardless of just how they were informed, all Plaintiffs were uniformly made aware that BOC required them to be responsive to their Department-issued BlackBerry devices at all times.

> **2.      Plaintiffs Were Uniformly Constrained by BOC's Unspoken and Unwritten Policy from Seeking Compensation for Off-Duty Work Performed on their BlackBerrys.**

Plaintiffs were denied compensation for off-duty work performed on their BlackBerrys due to an unspoken and unwritten BOC policy.  While this policy was never directly communicated to Plaintiffs, each Plaintiff was acutely aware that he or she would not be compensated for worked performed off-duty on their BlackBerrys.  The unspoken and unwritten policy uniformly served to constrain Plaintiffs from seeking compensation for off-duty work performed on their BlackBerry devices.  A system of BOC workplace cues fostered a tacit understanding that seeking compensation for off-duty work performed on BlackBerrys was something Plaintiffs should not do.

BOC's uniform overtime policy reflects misconceptions about overtime that the City has fostered and encouraged throughout CPD.  Many Plaintiffs developed a general belief from CPD employment that unless they physically left their home and went into work, they were not allowed to submit a time due slip for overtime.[37]  Other Plaintiffs testified to a "general rule of thumb" that unless they worked more than two hours off-duty, they should not submit an overtime due slip.[38]

Within BOC, Plaintiffs' understanding of the uniform overtime policy became even more succinct.  By and large, BOC culture uniformly led Plaintiffs to believe that they were required

---

[36] *See e.g.* Laurich at 24:7-13, 50:13-52:10; Corlett at 44:15-45:9, 49:4-22; Hamilton at 35:11-20, 41:4-20, Karuntzos at 42:5-43:13, 89:12-91:17; Spencer at 45:23-46:13; Inzerra at 53:18-57:5, 62:18-66:10; Roti at 95:22-96:6; Washburn 47:11-50:8, 55:17-60:15, 116:8-117:19; Martin at 54:6-55:4; 109:6-111:7; Padar at 76:9-23; Allen at 24:14-18, 42:20-21, 69:4-9; Cervenka at 19:7-11, 31:22..

[37] *See e.g.* Williams at 40:17-41:5; Washburn 71:3-13; Allen at 99:9-10.

[38] *See e.g.* Fiduccia at 35:4-22; Herrera at 108:19-109:21, 151:19-152:21; Hamilton at 47:18-23.

to perform uncompensated, off-duty work on their BlackBerrys.[39] Plaintiffs believed that because they were part of an elite, specialized unit, their supervisors "frowned upon" any attempt to submit overtime that did not amount to a significant number of hours worked.[40] Plaintiffs believed that their BOC job status would be jeopardized if they failed to answer their phones off duty or submitted a time due slip for doing so.[41] Most Plaintiffs believed that any time due slip based on off-duty work on their BlackBerry would be denied.[42] Some Plaintiffs had firsthand experiences where they put an overtime slip in but were denied because their supervisors considered the request "a joke."[43] Other Plaintiffs were told early in their careers not to put in overtime due slips for talking on their phones.[44] Regardless of which way the policy was communicated to Plaintiffs, each was acutely aware that a uniform policy existed that denied them the ability to seek compensation for overtime work performed on their BlackBerry devices.

### 3. On Paper, CPD General Orders Required Them to Seek Compensation. In Practice, Plaintiffs Were Uniformly Unable to Do So

The final aspect of the uniform BOC policy that denied Plaintiffs compensation for off-duty work performed on their BlackBerrys was the CPD General Orders ("G.O.") which required Plaintiffs to seek compensation but made it impossible to do so. Contrary to the City's opinion, the G.O.s are anything but "ironclad." See *City's Mtn. at 9.* While on paper, the G.O.s clarified Department procedure regarding seeking compensation for off-duty "electronic communication

---

[39] See e.g. Fiduccia at 133:8-23;Williams at 108:17-109:5; Laurich 66:1-67:3; Corlett at 36:11-18, 78:14-20, 91:5-22; Mancini at 43:15-44:24; Hamilton 49:6-12; Karuntzos at 33:24-34:21, 39:6-11, 103:16-104:14; Spencer at 29:19-30:6, 61:17-20, 65:7-13, 69:20-70:3; Inzerra at 118:17-120:22, Washburn 115:12-22, 121:17-122:23; Martin at 64:21-65:20; Stec at 57:6-18; Padar at 131:2-21; Allen at 95:17-96:15; Cervenka at 28:11-55; Valdez at 37:5-7.
[40] *See e.g.* Fiduccia at 33: 14-23; Corlett at 48:22-49:22, 94:4-14; Mancini at 43:15-44:24, 104:22-105:5; Karuntzos at 33:24-34:8; Spencer at 55:23-56:9; Inzerra at 79:6-81:5, 90:13-91:10, 118:17-120:22, Washburn at 122:4-23,127:4-22; Martin 64:21-65:20; Stec at 56:8-24; Padar at 92:16-93:4, 95:20-96:15; Allen at 40:3-41:7
[41] *See e.g.* Fiduccia at 68:1-69:24, 136:5-18, 141:14-16; Williams at 110:11-17, 163:13-164:1; Laurich at 67:4-17; Mancini at 91:13-92:24, 104:22-105:5; Spencer 65:7-13, 96:1-17; Inzerra at 111:19-112:5; Stec at 85:5-87:22; Allen at 40:12-16, 95:17-96:15; Waldera at 25:15-22; Cervenka at 25:15-19, 27:2, 28:11-15; Kirchner at 26:17-21.
[42]Cervenka at 22:8-22:3; Valdez at 24:8, 37:3
[43] *See e.g.* Fiduccia at 321:22-32:24; Herrera at 153:1-12.
[44] *See e.g.* Williams at 72:12-73:11.

devices," they simultaneously created procedural obstacles that made the process untenable in practice. Furthermore, the G.O.'s stated policy does not matter in circumstances where an unspoken policy—like the one entrenched within BOC—supersedes it.

CPD issued various G.O.s and other internal documents that attempted to limit the amount of overtime compensation available in regards to off-duty BlackBerry usage. The G.O.s were designed and implemented to save the City money both in terms of paying out overtime and as a form of protection against the litigation now before the Court.[45] Even Nicholas Roti, Chief of BOC, testified that changes in the G.O.s and internal compliance documents were implemented, at least partially, due to this lawsuit.[46] At first, the G.O.s and other related documents attempted to prevent any CPD member from being compensated for off-duty work performed on a BlackBerry device unless either on a "call-back" assignment or previously authorized by a supervisor.[47] See *Def. Ex. E.* Sometime in late October 2010, Plaintiffs were also asked to acknowledge and sign a "Department-Issued Electronic Communication Device Compliance Statement." See *Def. Ex. D.* This document likewise informed Plaintiffs that if they were not on "call back" or if they were not directed by a supervisor to use their BlackBerrys, they were not allowed to seek compensation for work performed on their BlackBerrys. *Id.* However, in August of 2013, CPD changed the language when it issued a new G.O. That G.O. forbid all CPD members from "perform[ing] other work." See *Def. Ex. F.* The 2013 G.O. changed the obligations for all CPD members from "prohibiting compensation for off-duty BlackBerry work" to "prohibiting performing off-duty Blackberry work." Similarly, BOC Chief Nicholas Roti issued a Memo on "Cell Phone Use Policy" on October 30, 2013, that reiterated the above CPD written policies. See *Def. Ex. G.*

---

[45] *See e.g.*Daly at 27:18-22.
[46] *See e.g.* Roti at 81:21-24, 157:14-158:8.
[47] *See generally* CPD G.O.s 98-07-09, 09-01-05.

These written CPD policies did little more than create an unnavigable situation for Plaintiffs. To begin with, Plaintiffs testified that G.O.s are nothing more than guidelines used for disciplinary measures that, in large part, did not apply to BOC.[48] As thoroughly explained above, the off-duty work Plaintiffs performed on their BlackBerry devices was time-sensitive and thus required an immediate response. Seeking supervisory approval prior to using their BlackBerrys was entirely unrealistic for Plaintiffs. Likewise, not using the BlackBerrys or keeping them turned off was also not a possibility based in any practical reality. Instead, the G.O.s were designed to protect the City against this exact type of litigation.[49] Demonstrating this fact, Plaintiffs testified that their own supervisors fail to follow or enforce the G.O.s.[50] Contrary to the City's insistence that the G.O.s in effect "prohibited [Plaintiffs] from performing work on their Blackberries[sic] while off duty," what they really did, up until August 2013, was prohibit Plaintiffs from being compensated for performing work on their BlackBerrys while off-duty. *Def. Mtn at 4 and 9*.[51] This is a distinction with a difference. All the G.O.s did was prohibit compensation for work performed off-duty on a BlackBerry during the applicable statutory period; this is exactly what Plaintiffs' case alleges. Because the nature of BOC work performed made it impossible to follow the written policies, the G.O.s were invalid as applied to Plaintiffs.

Because the uniform unwritten policy discouraged Plaintiffs from submitting overtime

---

[48] *See e.g.* Fiduccia at 126:14-127:2: Williams at 80:5-22, 111:1-7; Herrera at 115:6-116:8; Hamilton at 59:21-60:8; Karuntzos at 93:12-95:13; Inzerra at 86:19-87:8, Washburn at 81:23-82:22; Padar at 103:4-104:4, 141:18-143:24

[49] *See e.g.* Williams at 80:16-17; Corlett at 44:12-23; Karuntzos at 52:10-23; Inzerra 74:4-16, 86:7-18, 90:13-92:15, 118:17-120:22; Roti at 161:16-170:3, 179:1-180:1; Washburn 82:23-83:2, 84:8-16, 121:11-122:23; Stec at 38:17-39:15; Padar at 107:14-108:14; Waldera at 23:1-8.

[50] *See e.g.* Herrera at 94:8-11, Williams at 47:4-24, 75:1-12; Fiduccia at 65:10-22; Corlett at 89:16-90:2, Hamilton at 50:5-16, 52:3-54:18; Karuntzos at 90:1-24; Spencer at 97:7-98:2; Inzerra at 121:12-122;14; Roti at 147:14-148:15; Martin at 71:19-73:9, 108:4-111:17; Stec at 85:5-87:22

[51] G.O. 98-07-09, issued on October 13, 2010, states that CPD members performing off-duty work on "Department-issued electronic device[s] . . . *will not be compensated*." *Def. Ex. E.* (emphasis added). Meanwhile, G.O. 09-01-05, issued August 7, 2013, states that "Off-duty members will not use a Department-issued electronic communication device to access [] e-mail [], respond to electronic messages, *or perform other work related to Department business . . .*". *Def. Ex. F (emphasis added).*

due slips for work performed on their BlackBerrys, save for under unrealistic circumstances that do not apply to Plaintiffs' litigation, the G.O.s were nothing more than hollow bureaucratic paperwork. The fact that the G.O.s and other documents exist does not change the fact that Plaintiffs could only perform their duties if they regularly violated the written policy. In fact, every single Plaintiff testified that they were "obligated," or their job required them, to answer their BlackBerrys while off-duty in spite of the G.O.s stating otherwise.[52] This coupled with the fact that Plaintiffs were subject to a uniform unwritten policy that required them to regularly violate the written policy created an untenable situation. In cases like this, "lawful written (or verbal) policies will not shield [the City] from liability if plaintiffs can show other [City]-wide practices that may have been contrary to those policies and violated the FLSA." *Russell*, 721 F.Supp.2d at 815. Because BOC's uniform, unwritten policy constrained Plaintiffs' ability to follow the written policy, the G.O.s were invalid as applied to Plaintiffs.

## II. The Collective Class Should not be Decertified Because Plaintiffs are Similarly Situated Employees and thus, any Individualized Determinations that may be Necessary are Insignificant

Because an identifiable factual nexus and uniform policy applies to Plaintiffs, the collective class should be certified regardless of individualized determinations. The City bangs the drum regarding how difficult individualized determinations will be in this case. However, what is most important at the decertification stage is that Plaintiffs were similarly situated. This crucial factor makes the City's concern of individualized determinations insignificant. Case law demonstrates that individualized determinations regarding liability and damages are not legitimate reasons to decertify the Plaintiffs' collective class. Likewise, individualized determinations regarding the City's affirmative defenses are not significant enough to warrant

---

[52] Laurich at 101:1-13: Mancini at 91:13-92-21: 94:8-95:4; Karuntzos at 52:15-23, 87:10-88:18, 92:7-17; Spencer at 96:1-17; Inzerra at 84:23-85:12, 118:17-120:22; Washburn 81:23-82:22; Martin at 69:8-24, 108:4-111:17; Stec at 61:18-63:7, 84:3-85:4; Padar at 103:4-104:4, 107:14-108:14.

decertification.  If, in the alternative, this Court determines that the individualized determinations are indeed significant enough, it should apply the sub-claim approach and certify Plaintiffs in sub-classes.

**A.      Liability and Damages are not Significant Enough to Decertify the Class Individualized Determinations Regarding**

This Court should not decertify Plaintiffs' collective class simply because individual determinations exist regarding liability and damages for each Plaintiff.  To begin with, each Plaintiff alleges, and many have testified to the fact, that they performed numerous hours of off-duty work on their BlackBerrys and failed to submit overtime due slips because the BOC required them to act accordingly.  Thus Plaintiffs have collectively alleged and demonstrated liability on the part of the City.  Additionally, while the City has been painfully slow in producing documents regarding damages, they have recently produced enough records to make damage calculations possible.  To now argue that City should still not have to pay Plaintiffs for work they previously performed, because it would be too labor intensive, borders on the absurd.

Class certification analysis leaves room for individual determinations, both in terms of liability and damages.  In fact, even where "[s]ifting through the subclaims of each of the myriad plaintiffs is an unenviable task[,] . . . [] plaintiffs are nonetheless entitled to their day in court." *Alvarez*, 605 F.3d at 450.  As previously explained, what is most important is whether Plaintiffs were similarly situated in respect to their job duties and any "need for individual factual determinations is not fatal to certification of a collective action under the Fair Labor Standards Act, 29 U.S.C.S. § 216(b)."  *Russell*, 721 F.Supp.2d at 807.  Likewise, courts have logically anticipated that "[b]ecause each plaintiff's circumstances are likely to be different, '[v]ariations in damages . . . do not warrant decertification.'" *Russell*, at 820-21 (citing *Madden v. Corinthian Colleges, Inc.*, 2009 U.S. Dist. LEXIS 115331 at *3 (N.D. Ill. Dec. 8, 2009)).

18

Plaintiffs' testimony establishes the City's blanket liability, thus making any individual determinations minor, at best. Plaintiffs testified that, regardless of the G.O.s or any other documented policy or practice, their supervisors consistently contact them when they are off-duty.[53] The G.O.s changed nothing in BOC. Plaintiffs further testified that because of how BOC operates, it was understood that they were not allowed to put in time for off-duty work performed on their BlackBerry devices and that if one did, it would jeopardize their job status within BOC.[54] Plaintiffs have thus demonstrated the City's liability by showing that BOC created circumstances in which Plaintiffs were compelled to respond to their BlackBerrys off-duty but not submit time due slips for fear of jeopardizing their job status.

Likewise, Plaintiffs' testimony demonstrates uniform damages, thus making any individual determinations minor at most. Just because calculations of damages for each Plaintiff may be laborious, that in no way means that Plaintiffs are somehow not entitled to class certification. In fact, "unreported time for each employee could be reconstructed from memory, inferred from the particulars of the jobs [done], or estimated in other ways—any method that enables the trier of fact to draw a 'just and reasonable inference' concerning the amount of time the employee had worked would suffice." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013)(citing *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 669 and n. 2 (7th Cir. 2010). The City's argument regarding individual determinations of damages because of the differing "frequency of alleged work" misses the entire point regarding certification. Multiple Plaintiffs have already testified to their damages and when "considering the sufficiency of representative testimony, the critical inquiry is not the whether the employees' testimony is

---

[53] *See e.g.* Fiduccia at 65:10-22; Williams at 47:4-24, 108:10-19; Herrera at 110:20-112:5; Laurich 73:3-15, 101:22-102:2, 103:4-15; Corlett at 89:16-90:2; Hamilton at 38:2-9; Spencer at 97:7-98:2; Inzerra at 121:12-122:14; Roti at 190:3-191:18; Washburn 116:8-117:19; Martin 71:19-73:9, 108:4-109:16; Stec at 85:5-87:22.

[54] *See e.g.* Fiduccia at 67:3-68:22; Herrera at 163:20-164:1; Laurich at 110:4-16; Mancini at 91:13-92:24; Karuntzos at 60:12-22: Spencer at 65:7-13: Inzerra at 118:17-120:22; Allen at 100:19-22.

uniform as to damages, but rather whether it is sufficient to establish the amount and extent all plaintiffs worked 'as a matter of just and reasonable inference.'" *Driver v. Appleillinois, LLC*, 2013 U.S. Dist. LEXIS 154773, 20-21 (N.D. Ill. Oct. 29, 2013)(citing *Espenscheid*, 705 F.3d at 775)). In fact, if necessary the Court could "appoint a special master to resolve a difficult computation of damages." *Alvarez*, 605 F.3d at 449. Thus, while the City argues that it is impossible for Plaintiffs here to establish damages, the facts of this case in conjunction with relevant case law indicate that Plaintiffs should be given the opportunity to calculate and prove their individual damages.

**B.** **Individualized Determinations Regarding the City's Affirmative Defenses are not Significant Enough to Warrant Decertification**

Because a common policy and practice applied to all Plaintiffs, the City's argument regarding individualized defenses is insignificant. Because BOC policy required *all Plaintiffs* to be available and respond to their BlackBerrys at all times, any defenses that the City might assert would thus be applicable to *all Plaintiffs* as well. While this Court "has the discretion to determine whether the potential defenses would make the class unmanageable," the existence of a uniform policy undoes the City's argument regarding its defenses. *Russell*, 721 F.Supp.2d at 820(quoting *Moss v. Crawford & Co.,* 201 F.R.D. 398, 410 (W.D. Pa. 2000). Cases with many individualized defenses do weigh "in favor of decertification." *Camilotes*, 286 F.R.D. 339, 352 (N.D. Ill. 2012). However, it should be "noted, however, that '[i]f one zooms in close enough on anything, differences will abound; even for a single employee doing a single job.'" *Russell*, 721 F.Supp.2d at 820(quoting *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-1018, 2007 U.S. Dist. LEXIS 71179, 2007 WL 2780504 at *4 (D. Minn. Sept. 24, 2007).

Much like the defendant employer in *Russell*, the City bases its decertification argument primarily on "cases in which the Court was unable to identify a common policy or practice."

*Russell*, 721 F.Supp.2d at 815.  While the City relies on a total of six cases—all outside of the boundaries of the Seventh Judicial Circuit—to support its argument regarding individualized defenses, not a single one of them identified a common policy or practice.  Because Plaintiffs can demonstrate that a common policy or practice applied to each of them, any individualized defenses the City may assert are insignificant.  The City refers to five individualized defenses that it believes the Court would have to consider.  *Def. Mtn at 17-22*.  However, as in *Russell*, determinations concerning these defenses under the FLSA are applicable to all plaintiffs or entire subclasses because of the existence of a uniform policy or practice.

In *Russell*, the court found that an "open and available" policy existed that forced the plaintiff employees to perform work before their shifts began in order to be ready once their shift commenced.  *Russell*, 721 F.Supp.2d at 816.  Likewise, the court found that this policy made questions surrounding "what activities alleged in this case constitute 'work' and 'overtime[,]'". . . . the de minimis exception, [], statute of limitations issues, whether generous overtime pay properly compensates plaintiffs for increments of time worked amounting to under eight minutes, and contentions that plaintiffs who worked unpaid overtime failed to avail themselves of methods provided for compensation, are not individualized inquiries." *Id.* at 821.  The Court also determined that "questions concerning individuals who did not report overtime for various reasons (e.g., they did not believe the work was considered overtime, did not know they could report an exception or fill out an overtime sheet, forgot or did not have time to report the overtime, were unaware that increments of under eight minutes in one day could be added together and paid, etc.) can be grouped together and decided across all plaintiffs or subclasses" because a uniform policy applied to the collective class.  *Id.*

Here, Plaintiffs were all obligated to immediately respond while off-duty to supervisors,

subordinates, CIs, and other law enforcement officers on a daily basis in order to effectively

perform their job duties.  Plaintiffs were also uniformly aware that they were not to submit time

due slips for the off-duty work performed on their BlackBerrys.[55]  Just like in *Russell*, any

individual determinations of defenses pertaining to the City's liability should be grouped

together and applied to the collective class.  Accordingly, individualized determinations

regarding the City's affirmative defenses are not significant enough to warrant Decertification.

**C.      In the Alternative, if the Court Determines that the Individualized Determinations are Significant Enough, It Should Apply the Sub-Claim Approach**

In the alternative, if this Court finds that enough individualized determinations exist to

make the entire collective class unmanageable, it should certify Plaintiffs as individual sub-

classes.  Courts can certify collective classes "despite individualized questions and

circumstances, if common questions predominate." *Russell*, 721 F.Supp.2d at 812 (citing

*Alvarez*, 605 F3d at 449 ("[i]f common questions predominate, the plaintiffs may be similarly

situated even though the recovery of any given plaintiff may be determined by only a subset of

those common questions.").  While Plaintiffs contend that their claims are similarly situated

enough to be certified as is, at the very least this Court could implement the subclass approach as

an alternative.

Despite individualized determinations, "a collective action may be appropriate if

common questions predominate, even [if][sic] the court decides to certify some claims and

decertify others." *Russell*, 721 F.Supp.2d at 812-813(citing *Chabrier v. Wilmington Fin., Inc.*,

2008 U.S. Dist. LEXIS 27761 at 9 (E.D. Pa. Apr. 4, 2008)("A showing that there are elements of

plaintiffs' claim that differ, or that a small number of current plaintiffs are excluded cannot

---

[55]  *See e.g.* Spencer at 57:16-23, 98:12-15: Inzerra 79:6-81:5, 117:5-8; Roti at 104:7:23: Washburn 71:14, 106:19-107:7, 127:4-22; Martin at 80:3-8, 112:7-13: Stec at 87:23-88:9; Allen at 59:1-60:13; Daly at 52:21; Waldera at 18:13-19:2, 25:1-2; Richards at 62:23; Cervenka at 21:20, 23:6; Valdez at 23:18, 35:1-36:24; Kirchner at 25:3-15.

override the similarities present in most plaintiffs' claims and circumstances."). Plaintiffs that

share a more common factual nexus could be grouped together because "[r]esolving common

questions as a class, even through the additional mechanism of sub-classes, remains inherently

more efficient." *Fravel v. County of Lake*, 2008 U.S. Dist. LEXIS 51717, 10 (N.D. Ind. July 7,

2008). Thus, if it deems absolutely necessary, this Court could "adopt the subclaim approach

merely because the variety of subclaims renders the class 'heterogeneous." *Alvarez*, 605 F.3d at

449.

**III. Certification of the Collective Class is Further Warranted by Issues of Fairness and Procedural Concerns**

Issues of fairness and procedural concerns further establish that Plaintiffs are similarly

situated. While the City argues to the contrary, it also thought it was fair not to pay Plaintiffs in

the first place. When evaluating whether a class is similarly situated, courts "[i]n addition to

evaluating the factual and employment setting differences . . . also consider whether proceeding

as a collective would create fairness or procedural benefits." *Strait v. Belcan Eng'g Group, Inc.*,

911 F.Supp.2d 709, 731 (N.D. Ill. 2012). While not as important as whether Plaintiffs were

similarly situated, fairness and judicial economy are significant factors in determining if a

collective action should be certified. *Mielke*, 313 F.Supp.2d at 762. Even if this Court

determines that there was no BOC uniform policy, Plaintiffs' collective action could proceed if

the Court believes it will promote judicial economy. *Id.* at 761. A significant question for the

Court to consider is whether cleaving apart the class and engendering Fifty-Two (52) individual

lawsuits makes sense. If the Court were to decertify the action, "it reverts to one or more

individual actions on behalf of the named plaintiffs." *Alvarez*, 605 F.3d at 450.

**A. Certification of Plaintiffs' Collective Class Promotes Fairness**

Certifying Plaintiffs' collective class serves the best interests of fairness and judicial

economy because doing so would both serve the interest of justice and eventually dispose of the entirety of the litigation. In the instant case, Plaintiffs already limited the class in the interests of justice and equity.[56] Decertifying the class now would only serve to expand the scope of litigation and generate a great deal more work on both parties' behalf. A significant amount of discovery has already taken place, including but not limited to a detailed breakdown of Plaintiffs' telephone records, hours Plaintiffs worked in excess of 171 hours, and a preliminary analysis of emails sent and received by Plaintiffs during the relevant time period. What this production has revealed is that significant similarities exist for Plaintiffs in terms of the hours spent working on their BlackBerry devices while off-duty. At this juncture, any argument on the City's part that Plaintiffs did not actually perform work while off-duty on their BlackBerrys, regularly in excess of the statutorily required 171 hours, would be nothing more than legal posturing. Certification would curb this and thus expedite the ultimate termination of litigation. Accordingly, if this Court determines that Plaintiffs' job duties were in fact similar, judicial economy and fairness necessitate that this Court certify Plaintiffs' collective class.

B.     **Limited Procedural Concerns do not warrant Decertification of Plaintiffs' Collective Class**

No significant procedural constraints exist to warrant decertification. Any minor procedural inconveniences that exist regarding evidence in this case stem from the City's own doing. The City issued the BlackBerrys, created the uniform policy that denied compensation for off-duty work done on them, and similarly failed to keep clear records regarding their usage. The City created the circumstances that led to Plaintiffs' damages. Any procedural concerns are trivial in comparison with Plaintiffs' right to recover damages that flow from their injuries.

---

[56] *See e.g.* Doc. No. 67 - Plaintiffs' Memorandum in Support of Motion to Certify Class; Plaintiffs' counsel originally considered including CPD members outside the BOC but decided upon its Motion to Certify to limit the class to those sharing the most similar job duties, employment settings, and off-duty hours worked in excess of 171 hours in a regular pay period on BlackBerry devices.

Contrary to the case law that the City cites in its Motion, courts recognize that collective classes are never completely homogenous and that steps can be afforded in order to avoid what the City deems "individual trials." *Defs. Mtn to Decertify at 23*. In general, "'[v]ariations in damages . . . do not warrant decertification.'" *Russell*, 721 F.Supp.2d at 820-21**.** Here, the evidence is not so overly burdensome that the Court or a prospective jury could not discern it. Likewise, the process for deciphering that evidence is not nearly as cumbersome as the City wants the Court to think. As long as this Court finds that common questions apply to the entire collective class, damages can be determined for each individual Plaintiff by relying on only a subset of those common questions. *Alvarez*, 605 F3d at 449. Furthermore, courts disagree with the City's argument that "only individualized proof can establish liability." *Defs. Mtn to Decertify at 22*. Instead, in situations where similarly situated employees have been denied compensation, the court may utilize any method it deems to arrive at fair and equitable inference concerning the amount of uncompensated time worked. *Espenscheid,* 705 F.3d at 775. As such, the City's insistence that the evidence is too confusing and that no meaningful trial approach would work is nothing more than an unwarranted attempt to deny Plaintiff' right to pursue collective action.

## CONCLUSION

Decertification is inappropriate because Plaintiffs are similarly situated employees. Instead, the collective class should be certified because Plaintiffs share a common, identifiable factual nexus, any necessary individualized determinations are insignificant, and doing so is further warranted by issues of fairness and procedural concerns. Wherefore, Plaintiffs request that this honorable Court deny Defendant's Motion to Decertify the Collective Class.

Respectfully submitted,


*s/ Paul D. Geiger*
PAUL D. GEIGER



Paul D. Geiger (#6210743)
Ronald C. Dahms (#6289304)
Sean C. Starr (#6304070)
Attorneys for Plaintiffs
135 South LaSalle Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 609-0060
Facsimile: (312) 541-8991