IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY ALLEN, Individually and on behalf of other similarly situated employees of the Chicago Police Department, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | No. 10-CV-03183 |
| vs. | ) | Magistrate Judge Schenkier |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OBJECTION TO DEFENDANT'S BILL OF COSTS**

Plaintiff, JEFFREY ALLEN, individually and on behalf of the other similarly situated Opt-in Plaintiffs (the "Plaintiffs"), by and through their attorneys Paul D. Geiger, Sean C. Starr, and Ronald C. Dahms, submit the following Objection to Defendant's Bill of Costs and state the following:

**ARGUMENT**

Plaintiffs request that this Court deny or reduce Defendant's Bill of Costs and stay the enforcement of any remaining costs pending the outcome of Plaintiffs' Appeal. Alternatively, Plaintiffs request that Defendant's costs be denied or reduced by removing items that are improper or unreasonable. Costs incurred merely for the convenience of the prevailing party may not be recovered. *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993). Furthermore, the prevailing party has the "burden of demonstrating the amount of its recoverable costs." *Telular Corp. v. Mentor Graphics Corp.,* 2006 WL 1722375, at *1(N.D.Ill. June 16, 2006). Should the Court consider the merits of Defendant's application, it should deny an award of costs to Defendants as unjust in light of the particular circumstances in this case. Should the Court decide to assess the merits of Defendants' bill of costs now, it will find that many of the costs for

which Defendants seek recovery are precluded by 28 U.S.C. §1920, as well as this District's and the U.S. Courts' guidelines on taxable costs. Finally, while the Court entered judgment on behalf of Defendant, the District Court found that found that Plaintiffs did meet their burden of showing that they in fact performed off-duty FLSA-compensable work on their Blackberrys. The law authorizes denial of costs under these circumstances.

## I.    Certain Items in the Bill of Costs are Improper or Unreasonable

Should this Court nevertheless determine that it is appropriate to determine costs at this juncture, Plaintiffs have several objections to Defendants' Bill of Costs. Some of the costs sought by Defendants should be denied because they are not authorized, or are excessive and not justified under 28 U.S.C. §1920, and this District's and the U.S. Courts' guidelines on taxable costs. Furthermore, Federal Rule of Civil Procedure 54(d)(1) gives courts "discretionary authority" to tax costs and thus "grants a federal court discretion to refuse to tax costs in favor of the prevailing party." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). Further, a court must give "careful scrutiny" to all items proposed as costs. *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964); accord *Koppinger v. Cullen-Schiltz & Assocs.*, 513 F.2d 901, 911 (8th Cir. 1975) ("The bill of costs proposed by a winning party should always be given careful scrutiny."). Accordingly, Plaintiffs submit the following objections to Defendants' Bill of Costs:

### A.  Trial Transcripts

Defendant requests $7,792.40 in costs for trial court transcripts. These costs are unreasonable and unnecessary. Case law establishes that "[p]arties cannot recover the added cost of expedited transcripts unless they can show that it was reasonable and necessary to order transcripts on an expedited basis." *Se-Kure Controls, Inc. v. Vanguard Prods. Group*, 873

F.Supp.2d 939 (N.D. Ill. 2012)(quoting *Neuros Co. v. KTurbo, Inc*., No. 08-5939, 2011 U.S. Dist. LEXIS 97063, 2011 WL 3841683, at *2 (N.D. Ill. Aug. 25, 2011). Additionally, the *U.S. Courts' Guidelines on Preparing Bills of Costs* provides that, "[d]aily transcripts of trial proceedings obtained for the convenience of counsel are not taxable as costs unless advance authority has been sought and obtained from the Court." *Guidelines on Preparing Bills of Costs* (C)(2)(ii) *available at* http://www.tned.uscourts.gov/docs/guidelines.pdf.

The City never asked for, nor was granted, advance authority from the Court to bill costs for daily transcripts. Instead, the City argues that the expedited transcripts were reasonable and necessary because they utilized them to draft their "Motion for Judgment as a Matter of Law which the City filed during trial on August 20, 2015[] [and] its Revised Proposed Findings of Fact." *Defendant's Bill of Costs p. 7* (Dkt. 234). Neither of these motivations is reasonable or necessary. To begin with, the Court never even ruled on the City's Rule 52(c) Motion. Instead, upon hearing evidence from both sides and after taking over three months to rule, it issued its ruling and stated in its Order that "[a]ll pending motions are terminated as moot." (Dkt. 225). Because the Rule 52(c) Motion was moot, and the case was instead decided upon the totality of evidence, it is unreasonable and unnecessary for the City to ask for the cost of transcripts associated with drafting their Rule 52(c) Motion. What is more, Defendants finished its Rule 52(c) Motion prior to testimony on Thursday, August 20th. Defendant had no reason to continue ordering daily copy the last three days of the trial when its Rule 52(c) Motion was already completed

Likewise, the "Revised Proposed Findings of Fact" were only necessary at the City's request. Findings of Fact are generally submitted before the trial and Plaintiffs argued as such when objecting to Defendant's request during a phone conference with the Court on October 31,

2015.  (Dkt. 216).  Furthermore, the Northern District's Standing Order Establishing Pretrial

Procedure section, entitled "Guidelines for Proposed Findings of Fact and Conclusions of Law,"

does not contemplate the filing of Proposed Findings of Fact *after the trial*.  The parties had

previously submitted Findings of Fact *before the trial*, and as such, the City's request for costs

associated with trial transcripts is unreasonable and unnecessary.

Accordingly, because the City cannot demonstrate that the costs of expedited trial

transcripts and the City never sought nor obtained advance authority for the costs of expedited

trial transcripts, the costs associated with the expedited trail transcripts should be denied.

**B.  Depositions**

Defendant requests $10,256.49 in costs for deposition transcripts.  These costs are

unreasonable and unnecessary excessive.  Case law has established that the district court may

award deposition costs in its discretion, pursuant to 29 U.S.C. § 1920(2).  *Held v. Held*, 137 F.3d

998 (7th Cir. Ill. 1998).  Parties may recover costs for deposition transcripts if they are necessary

for the case.  The phrase "for use in the case" refers to "materials actually prepared for use in

presenting evidence to the court."  *Perry v. City of Chicago*, No. 08–4730, 2011 WL 612342, at

*2 (N.D. I      ll. Feb. 15, 2011)(quoting *McIlveen v. Stone Container Corp.,* 910 F.2d 1581,

1584 (7th Cir.1990).  While deposition transcripts do not have to be "absolutely indispensable in

order to provide the basis of an award of costs[,]" they do need to be "reasonably necessary."

*Barber*, 7 F.3d 636, 645 (7th Cir. 1993).  This Court should exercise discretion and substantially

decrease the Defendant's costs for transcripts because, contrary to case law, 1), Defendant seeks

unreasonable remuneration for the costs associated with depositions of witnesses it never called

at trial; and, 2) Defendant seeks unreasonable remuneration for court reporter appearance fees in

addition to the maximum copy rate per page.

1. Depositions of Witnesses Not Called at Trial

Defendant requests **$2225.65** in costs for deposition transcripts for witnesses not called at trial. These costs are contrary to case law because they unreasonable and unnecessary excessive. The use of a deposition at trial is not a prerequisite for finding that it was necessary to take that deposition. *Cengr v. Fusibond Piping Sys., Inc.,* 135 F.3d 445, 454 (7th Cir.1998). Defendants deposed 16 Plaintiffs during class discovery. However, Defendants did not call Sergeant Ricardo Herrera, Sergeant Sean Martin, and Sergeant James Corlett. In *Williams v. Fico,* No. 11 C 1105, 2015 WL 3759753, at *5 (N.D. Ill. June 15, 2015), this Court stated that plaintiffs' argument that deposition costs should be disallowed was "make weight" because it was the plaintiffs that requested the witnesses' depositions and listed the witnesses on the final pre-trial as a will-call or may-call witness. Here, it was Defendant that requested the depositions of the aforementioned Plaintiffs. Even more, Plaintiff, Sergeant Corlett, wasn't even listed on the Defendant's will-call or may-call list. Additionally, unlike *Williams,* the three listed Plaintiffs were not on Plaintiffs' will-call or may-call list. As such, Plaintiffs request this Court deny Defendant's requests for costs of the aforementioned Plaintiffs' depositions.

Additionally, Plaintiffs believe Defendant's request for Marlene Laurich's deposition costs should be denied. At the hearing to dismiss Sgt. Laurich as Plaintiff, this Court ruled that Ms. Laurich could be dismissed without fess or costs assessed to her. Defendant obtained the benefit of the dismissal of a Plaintiff. Plaintiffs believe that both parties should bear the fees and costs involved associated with Laurich. Moreover, it was Defendant that required Laurich's deposition. Of course, had Plaintiffs prevailed at trial, Defendant would have vigorously contested the attorneys' fees and costs sought in the representation of Sgt. Laurich and Defendant would have been correct in doing so.

5

2.   Court Reporter Attendance Fees

Defendant requests **$10,318.35** in costs for original deposition transcripts, including the appearance fees for court reporters.  These costs are contrary to case law because they are unreasonable and unnecessary excessive.  Court reporter appearance fees "may be taxed as costs only to the extent that the fee, when added to the per-page rate charged for the deposition transcript, does not make the total charge per page exceed the page rate established by the Judicial Conference."  *Fletcher v. Chicago Rail Link, LLC,* No. 06 C 842, 2007 WL 4557816, at *1(N.D.Ill., Dec. 20, 2007).

In the instant case, after including attendance fees, Defendant's original deposition transcript costs exceed the Northern District of Illinois' page rate of $3.65 by $1,886.85. (Exhibit A).  Plaintiffs have included the additional $0.10 per page in most of the depositions as they were charged at $3.55 per page.  However, even after including the amounts to make up for the $0.10 per page difference, the remainder of the court appearance fees exceed the maximum rate for original deposition costs by almost $2,000.00.

 As this Court held in *Williams*:

 The Seventh Circuit has upheld the discretion of judges to award court reporter attendance fees as taxable costs. *Held v. Held,* 137 F.3d 998, 1002 (7th Cir.1998). However, attendance fees "may be taxed as costs only to the extent that the fee, when added to the per-page rate charged for the deposition transcript, does not make the total charge per page exceed the page rate established by the Judicial Conference." *Fletcher v. Chicago Rail Link, LLC,* No. 06 C 842, 2007 WL 4557816, at *1 (N.D.Ill., Dec. 20, 2007). Since Defendants already requested, and received, the Judicial Conference rate for the transcripts themselves, we will not allow them in addition to recover court reporter attendance fees.

2015 WL 3759753, at *5.

Therefore, Plaintiffs request that the Court reduce the original deposition costs so that the per page rate does not exceed the page rate established by the Northern District of Illinois and Judicial Conference.

6

### C. Outside Vendor

Defendant requests $16,200.00 in costs for compiling Plaintiffs' emails attributed to the City's use of the outside vendor, Aloha Documents. Defendant is correct that Plaintiffs requested that it turn over chronologically listed emails. However, Defendant the charges associated with Aloha Documents have little to do with the categorization of emails. In its Bill of Costs, Defendant attempts to categorize the Aloha Fee as a fee for copying, categorizing, and organizing Plaintiffs' emails. Instead, in its invoice to the City, Aloha Documents billed the City for "Tiff Conversion, OCR, Endorse & Export for Searchable PDF." Ex. E to Bill of Costs. Although the Invoice is very brief in details, what is very clear is that Aloha's primary charges were for converting the emails into searchable PDFs. The emails on the hard drive Plaintiffs received from Defendants were anything but searchable. In fact, counsel for Plaintiff estimates that less than 10% of the emails received from Defendant were searchable. *See* Affidavit of Ronald C. Dahms ("Dahms Aff.). What is more peculiar, it appears that, after Defendant received the hard drive from its vendor, the emails files were modified prior to being tendered to Plaintiffs' counsel. Id. Thus, Plaintiffs are unsure is Aloha failed to properly convert the vast majority of emails into a searchable form, or if Defendant converted the emails into an unsearchable form prior to tendering the hard drive to Plaintiffs. Either way, Plaintiffs should not have to incur the costs of emails that were almost untenable and required Plaintiffs' counsel to meticulously search through page by page to gather work emails sent and received while off-duty.

What is more, three of the Plaintiffs' folders on the hard drive were completely empty. Id. Once again, Plaintiffs are unsure if the the empty folders were the fault of Aloha or

Defendant, since the folders were created and modified after Defendant had received the hard drive from Aloha. Id. The emails from Plaintiffs Sergeant Robert Retner, Sergeant Timothy Casey, and Lieutenant James Sanchez accounted for 10.4% of the emails that were to be produced to Plaintiffs on the hard drive created by Aloha.  Plaintiffs understand that mistakes can be made, by both the vendor and Defendant.  However, Plaintiffs should not have to pay for the costs converting the emails into searchable form, when the Plaintiffs were tendered emails that were unsearchable.  Nor should Plaintiffs have to pay for emails they never received

### D.  Costs Associated with Motions

Defendant requests costs associated with its motions for conditional certification, decertification of the collective action, and summary judgment.  These costs are unreasonable and unnecessary excessive.  Case law has established that the district court may award deposition costs at its discretion.  However, the use of a deposition in a summary judgment motion or at trial is not a prerequisite for finding that it was necessary to take that deposition.  *Cengr,* 135 F.3d at 454.  Furthermore, while costs of depositions used in support of a successful summary judgment motion will be taxable, the inverse is not necessarily true.  *Abbs v. Con-Way Cent. Exp., Inc*., 2007 WL 1017364 at*3 (E.D. Mich. 2007).  Rewarding costs for failing to effectively demonstrate that no material issue of fact exists in such a fact-intensive type of case seems utterly unequitable.  Furthermore, copies of documents used to support motions, such as Plaintiffs' complaint, the Court's orders, and other documents already filed on the docket are not copies of materials "actually prepared for use in presenting evidence to the court."  *Wells v. Johnson,* 06–6284, 2012 WL 3245955, at *1 (N.D.Ill. Aug. 6, 2012); *see also Pugh v. Bd. of Educ. of the City of Chicago,* 10–4115, 2012 WL 5199629, at *4 (N.D.Ill. Oct. 22, 2012)(holding that it was not reasonably necessary for the prevailing party to make copies of orders entered by

the court or papers filed by the losing party, and thus, those expenses were not recoverable as costs).

In the instant case, Defendant unsuccessfully brought motions to to decertify the collective class, as well as its motion for summary judgment. The Court either denied or, in the case of summary judgment, declined to hear those motions. Furthermore, while the Court found that Plaintiffs did not meet their burden as far as demonstrating Defendant had an unwritten policy that denied Plaintiffs' compensation, Plaintiffs did meet their burden of showing that they were performing FLSA compensable overtime work. Not only were Plaintiffs a legitimate collective class, but the primary thrust of their summary judgment motion, that Plaintiffs failed to meet their burden of proving an overtime claim, was resolved in favor of Plaintiffs at the summary judgment stage and also, significantly, at trial. As such, asking for any costs associated with these motions is unreasonable and unnecessarily excessive.

### E. Copying Costs

Defendant requests a whopping total of $24,274.35 in copying costs. Plaintiffs implore the Court to deny or significantly reduce Defendant's copying fees. In addition to the aforementioned objections, Plaintiffs object to Defendant's calculation of its total copying costs. Costs for services associated with copying are only recoverable "if these services are necessary to reproduce a document in a way that is organized and useful to the opposing party and the court." *First City Sec. v. Shaltiel,* 1993 WL 408370, *2, 1993 U.S. Dist. LEXIS14312, *6 (N.D.Ill. October 6, 1993).

Defendant attaches the 37 page Exhibit D to substantiate its copy fees. For in-house copying, Defendant claims $8,074.35 at a rate of $0.10 per page.[1] That amounts to over 80,000

---

[1] If defendant were truly charging $0.10 cents per page, its claimed amount could not end with anything other than a zero. In this case, it ends with a five.

pages.  By way of reference, 80,000 pages would fill 16 entire boxes of copy paper that hold 10

reams of 500 sheets each.   More importantly, Exhibit D does not support the in-house copying

charge.   Plaintiffs' counsel manually added all of the charges for copies in Exhibit D and they

total $6,318.94; which is not even close to $8,074.35.  Finally, if this court is inclined to consider

in-house copying fees, as explained above, it should exclude any and all fees for copying related

to the motion for summary judgment that was thrown out without response or hearing.  It should

do the same for the Defendant's denied Motion to Decertify.  On December 17, 2014, a due date

for Defendant's Motion for Summary Judgment was set.  It was later extended to February 18,

2015.  Between December 29, 2014 and the due date of February 18, 2015, Defendant claims

$2,729.70 for copy costs (over 27,000 copies), ostensibly for a motion that was thrown out by the

trial court.  These costs should not be taxed against Plaintiffs.

Furthermore, it is important to note that in circumstances where a prevailing party does

not specifically identify the exhibits for which it claims costs, the "court should deny awarding

costs for the exhibits because it is impossible to determine whether the costs were necessary for

use in the case." *Vigortone Ag Products, Inc. v. PM Ag Products, Inc.,* 2004 WL 1899882, at *8

(N.D. Ill. Aug. 12, 2004).  While Defendant seeks remuneration for costs associated with the

copying of deposition and trial exhibits, it does not specifically identify which exhibits it claims

costs for, thus making it impossible for the Court to accurately determine whether the costs were

necessary for use in the case.  A significant portion of Defendant's copying went towards

exhibits seeking to disprove that Plaintiffs actually performed FLSA compensable work.  As

stated above, the Court found that Plaintiffs met their burden of proving this.  What is more,

Defendant was the original record keeper of all the material evidence that proved Plaintiffs

performed the overtime work.  If Defendant was solely seeking costs for exhibits related to

10

proving it had no notice this work was occurring, it might have a more persuasive claim. However, Defendant fails to do exactly this and instead expects the Court to compel Plaintiffs to pay for all its exhibits, no matter how bereft of evidentiary value they may be.

## II.    Defendant's Costs are Unreasonable

Defendant requests a grand total of $42,323.24 in costs from a group of Chicago Police Department members who demonstrated in federal court that they had worked FLSA overtime that the City never paid them for.  It is true that, pursuant to Rule 54(d), a prevailing party may recover costs "as a matter of course."  F.R.Civ.P. 54(d).  But it also firmly established that the prevailing party's entitlement to costs "is subject to the ultimate discretion of the district court in determining whether and to what extent costs may be awarded."  *Deimer v. Cincinnati Sub-Zero Prods.*, 1994 U.S. Dist. LEXIS 13237 (N.D. Ill. Sept. 19, 1994).  Other courts have recognized that while there is an intrinsic appeal in following course and authorizing costs, the chilling effect on future litigation should be considered when resolving costs.  *Hiegel v. Hill*, 771 F.2d 358, 361 (8th Cir. 1985) *see also Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir.1999)(taxing costs to Plaintiffs should be taken in account because it may have a chilling effect on future plaintiffs seeking to vindicate their rights).

In the instant case, Plaintiffs testified at trial that they overwhelmingly believed that filing this lawsuit was the only way to get paid for the overtime work they did on their Department-issued Blackberry devices.  While the Court agreed that they were—to some varying degree— performing that overtime work, it found that Defendant did not have sufficient notice that Plaintiffs were working the overtime.  From a practical standpoint however, Defendant was put on notice at the time of the filing of the lawsuit.  Instead of coming to some agreement concerning Plaintiffs' overtime work or instituting safeguards to ensure the overtime work was

11

either curbed or compensated, Defendant seemingly did everything in its power to forestall any equitable remedy, all the while keeping the clock running on its costs. Practically speaking, Defendant incurred these costs at the same time it avoided paying for work that it legitimately benefitted from. Its costs were therefore largely incurred for its own convenience. Rewarding Defendant after it received the benefit of so much free work is not merely unreasonable, it is also unconscionable.

Awarding costs to the Defendant would have a significant chilling effect on future FLSA litigation. Employees across the country, and in particularly within the Seventh Circuit, will logically find pause and fear the costs associated with pursuing claims that seek compensation for overtime work actually performed but withheld from them by employers, no matter the reason. Furthermore, the City of Chicago is struggling mightily with widespread crime and a skyrocketing murder rate. Plaintiffs are the hardworking officers serving and protecting the people of Chicago, who have already done so, in part, for free. It defies logic how the City can expect Plaintiffs to be motivated to work harder and longer hours, while at the same time, requesting that they pay $42,323.24 in costs for trying to get paid for overtime they have already worked. Accordingly, Plaintiffs request that this Court weigh the equities involved and deny or significantly reduce Defendant's costs because they are improper or unreasonable.

### III. Plaintiffs Requests that Enforcement of Costs Stayed Pending Appeal

On January 4, 2016, Plaintiff filed their Notice of Appeal with the Seventh Circuit Court of Appeals under Case No. 16-1029. In accordance with Fed.R.Civ.P. 54(d) and F.R.A.P. 8, Plaintiffs request that this Court stay the enforcement of any costs assesses against until their appeal is decided by the Seventh Circuit.

<u>**CONCLUSION**</u>

WHEREFORE, for the foregoing reasons stated, Plaintiffs respectfully request this Court Plaintiffs request that this Court deny, reduce, or stay action on Defendant's Bill of Costs pending the outcome of Plaintiffs' Appeal. Alternatively, Plaintiffs request that Defendants' costs be denied or reduced by removing items that are improper or unreasonable.

Respectfully submitted,

<u>/s/</u> Paul D. Geiger

Paul D. Geiger
Law Offices of Paul D. Geiger
540 North Frontage Road, Suite 3020
Northfield, Illinois 60093
(773) 410-0841
ARDC #6210743

13

## CERTIFICATE OF SERVICE

Ronald C. Dahms, an attorney, hereby certifies that he caused the foregoing **Plaintiffs'**

**Objection to Defendant City of Chicago's Bill of Costs,** to be filed electronically with

the Clerk of the District Court and served on Defendant's counsel of record by operation of the

Court's CM/ECF system, on this 5th day of February, 2016, as follows:


Jennifer A. Naber
James J. Convery
Matthew P. Kellam
Laner Muchin, Ltd.
515 N. State Street, Suite 2800
Chicago, Illinois 60654
(312) 467-9800


s/  Ronald C. Dahms
Ronald C. Dahms

14