UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY ALLEN,  Individually and on behalf of other similarly situated employees of the Chicago Police Department, | ) ) ) ) | |
| | ) | Case No. 10 C 3183 |
| Plaintiffs, | ) ) | Magistrate Judge Sidney I. Schenkier |
| v. | ) ) | |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Jeffrey Allen, a sergeant in the Chicago Police Department ("CPD") sued the City of Chicago on behalf of himself and current and former police personnel assigned to CPD's Bureau of Organized Crime ("BOC") alleging that the City willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by maintaining an unwritten policy to deny plaintiffs compensation for off-duty work that the City required that they perform on their CPD-issued BlackBerry devices. After a five-day bench trial, this Court issued a written opinion finding in favor of the City. Specifically, we found that while plaintiffs had proven that they performed off-duty work on their CPD-issued BlackBerrys, they did not prove that the City maintained an unwritten policy to deny them compensation for this work (doc. # 226: 12/10/15 Mem. Op. and Order).

Plaintiffs filed a notice of appeal to the Seventh Circuit on January 5, 2016, and defendant filed a bill of costs on January 7, 2016, seeking $42,323.24 (doc. # 233: Bill of Costs).

---

[1]On December 21, 2010, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1(b), this case was assigned to this Court for all proceedings, including entry of final judgment (docs. ## 35, 38).

Plaintiffs filed an objection to defendant's bill of costs, arguing that this Court should deny or reduce the bill of costs or stay enforcement of any costs pending the outcome of their appeal (doc. # 239). For the reasons that follow, we grant in part and deny in part defendant's bill of costs. We award defendant $21,445.19 in costs, and stay payment of those costs pending appeal.

## I.

"Federal Rule of Civil Procedure 54(d)(1) gives district courts discretion to award costs to prevailing defendants "[u]nless a federal statute . . . provides otherwise." *Marx v. Gen. Revenue Corp.*, -- U.S. --, 133 S. Ct. 1166, 1170 (2013) (quoting Fed. R. Civ. P. 54(d)(1)). Federal statute authorizes courts to tax the following as costs: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees . . . ; and (6) Compensation of court-appointed experts [and] compensation of interpreters . . . ." 28 U.S.C. § 1920. The Supreme Court has described the scope of taxable costs as "narrow" and "limited to relatively minor, incidental expenses as is evident from § 1920." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012).

In addition to being authorized by statute, "a cost must be both reasonable and necessary to the litigation for a prevailing party to recover it." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). "Any party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs. of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). Once the prevailing party demonstrates that particular costs are authorized by statute and reasonable

2

and necessary, the losing party then bears the burden to affirmatively show that the taxed costs are not appropriate. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005).

## II.

Initially, we consider plaintiffs' suggestion that this Court delay "consider[ation] of the merits of Defendant's application" pending plaintiffs' appeal (Pls.' Obj. at 1). We decline to do so.

"[C]osts are appealable separately from the merits; a district court may award costs even while the substantive appeal is pending." *Lorenz v. Valley Forge Ins. Co.*, 23 F.3d 1259, 1260 (7th Cir. 1994). A pending appeal "is not a good reason to postpone consideration" of defendant's bill of costs. *In re Text Messaging Antitrust Litig.*, No. 08 C 7082, 2014 WL 4343286, at *1 (N.D. Ill. Sept. 2, 2014) (Kennelly, J.). "[P]rompt action on defendant[']s bills of costs actually promotes judicial economy, because if plaintiffs appeal the Court's decision, any subsequent appeal from the order on costs can be consolidated with the appeal on the merits and heard at the same time." *Id.* (internal citations and quotations omitted). *See also Collins v. United States*, No. 03 C 2958, 2008 WL 4549303, at *1 (N.D. Ill. Apr. 24, 2008) ("an expeditious ruling on a bill of costs is favored to avoid piecemeal appeals"). Plaintiff has not provided the Court with any compelling reason to stay consideration of the bill of costs in this case. Therefore, plaintiffs' request to delay consideration of defendant's bill of costs is overruled. *See Holyfield-Cooper v. Bd. of Educ. of City of Chicago*, No. 13 CV 3625, 2014 WL 3808933, at *2 (N.D. Ill. Aug. 1, 2014).

## III.

We next turn to plaintiffs' argument that this Court should deny any award of costs to defendant (Pl.'s Obj. at 1-2, 11-12). There is a strong presumption favoring the award of costs to

the prevailing party, and costs should be awarded absent good reasons not to do so: such as, where there is misconduct by the party seeking costs or where the losing party is indigent. *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003); *see also Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997). As the FLSA addresses only an award of costs to a prevailing plaintiff, and no other provision of the FLSA precludes an award of costs to a prevailing defendant, this strong presumption applies where a prevailing defendant seeks to recover costs under the FLSA. *Frye v. Baptist Mem'l Hosp., Inc.*, 507 F. App'x 506, 508 (6th Cir. 2012) (citing 29 U.S.C. § 216(b)).

Plaintiffs do not challenge defendant's status as the prevailing party. Nor do plaintiffs allege they are indigent or that there was misconduct by the City such that it should be foreclosed from recovering any costs whatsoever. Rather, plaintiffs contend that an award of costs to defendant would be "unjust in light of the particular circumstances in this case" (Pls.' Obj. at 1). Plaintiffs offer several arguments in support of this contention, none of which we find meritorious.

*First*, plaintiffs contend that the law "authorizes denial of costs" in this case, where "the Court entered judgment on behalf of Defendant . . . [but] found that Plaintiffs did meet their burden of showing that they in fact performed off-duty FLSA-compensable work on their BlackBerrys" (Pls.' Obj. at 2). To achieve a verdict in their favor at trial, plaintiffs had to prove two things: (1) that they performed compensable work off-duty on their BlackBerrys; *and* (2) that defendant had a uniform culture or policy not to compensate plaintiffs for this work (12/10/15 Mem. Op. and Order at 4). In this Court's written opinion, we concluded that "some, but not all, of the off-duty activities plaintiffs performed on their BlackBerrys constituted compensable work under the FLSA," but "that plaintiffs fell far short of showing a uniform

4

culture or well-grounded understanding that off-duty BlackBerry work would not be compensated in BOC" (*Id.* at 34).

Plaintiffs' success in proving one of the two elements of their claim does not deprive defendant of its status as the prevailing party in this case. It is often the case that a plaintiff proves some, but not all, elements of the case. When that happens, plaintiff loses and defendant is the prevailing party entitled to costs. The same is true here; plaintiff has offered no authority to the contrary.

*Second*, plaintiffs argue that defendant should be denied costs in order to avoid deterring prospective plaintiffs from seeking to vindicate their FLSA rights (Pls.' Obj. at 11-12). We disagree. At the threshold, we note that the FLSA contains no provision protecting a plaintiff from being required to pay costs under Rule 54(d) when he or she loses a case. That strikes us as evidence that as a general matter, Congress did not view an award of costs to a prevailing defendant to have the chilling effect plaintiffs allege.

In addition, we agree with the Third Circuit's reasoning in *Reger v. The Nemours Found., Inc.*, 599 F.3d 285 (3d Cir. 2010), as to why there is no chilling effect when a court awards costs to a prevailing defendant:

> The fact that a prevailing party prosecutes its rights under the Federal Rules of Civil Procedure to an award of costs cannot be seen as chilling the flow of litigation. Indeed, the very possibility that a losing party will be required to reimburse the prevailing party for its costs should cause parties to litigation to pause and calculate the risks of pursuing meritless or marginal claims. After all, the Rules presume that the prevailing party is entitled to costs. It is incumbent on an attorney to explain the risks of litigation to his or her client—including the risk that under Rule 54(d)(1) they may have to pay costs should their litigation ultimately prove unsuccessful.

*Reger v. The Nemours Found., Inc.*, 599 F.3d 285, 289 (3d Cir. 2010). In that medical malpractice case, the plaintiffs had "suffered the utmost tragedies," yet the reasoning against

denying costs nevertheless applied. *Id. See also McGill v. Faulkner*, 18 F.3d 456, 460 (7th Cir. 1994) ("far from 'chilling' prisoners' litigation, the rule that indigent prisoners, like anybody else, may be required to reimburse costs others have expended defending the prisoners' unsuccessful suits serves the valuable purposes of discouraging unmeritorious claims and treating all unsuccessful litigants alike"). The same reasoning applies to this FLSA case. *See Frye*, 507 F. App'x at 508 (holding that the district court did not err in finding that awarding costs to a prevailing defendant would not have an unwarranted chilling effect on future FLSA claims).

*Third*, plaintiffs complain that defendant did not "com[e] to some agreement" on plaintiffs' claims, but instead "did everything in its power to forestall any equitable remedy" (Pls.' Obj. at 11-12). In its opinion, the Court took both sides to task for failing to take steps that could have provided the kind of clarity that might have facilitated resolution of the case. Since both parties failed to do so, the Court was required to decide -- and, we decided that plaintiffs had failed to prove all necessary elements of their claim. That made defendant the prevailing party. Plaintiffs' dissatisfaction with defendant's unwillingness to negotiate a settlement that would have avoided a trial -- at which defendant prevailed -- is not a sound basis to deny defendant its reasonable costs.

*Fourth*, plaintiffs suggest that awarding costs would discourage them from "work[ing] longer and harder hours," which would not be in the interest of a city "struggling with widespread crime and a skyrocketing murder rate" (Pls.' Obj. at 12). We reject any suggestion that plaintiffs will do anything other than their best in their critical public safety work simply

because they are required to do what plaintiffs generally must do when they lose a case: pay reasonable defense costs.[2]

## IV.

We now turn to an analysis of the costs that defendant seeks, which total $42,323.24. Plaintiffs request that this Court reduce or deny items in defendant's bill of costs -- including certain costs for trial transcripts, depositions, copying, and converting emails into searchable format -- on the grounds that they are improper or unreasonable (Pls.' Obj. at 2). We have discretion to determine which costs were necessary to the litigation and what amount is reasonable. *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 453 (7th Cir. 1998). We address below each category of costs requested by defendant and challenged by plaintiffs.

## A.

Defendant requests $7,792.40 for trial court transcripts. Trial transcripts are recoverable under Section 1920(2), which authorizes an award of "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." *Miller v. Vohne Liche Kennels, Inc.*, 600 F. App'x 475, 478 (7th Cir. 2015). However, "courts may not tax the costs of transcripts . . . provided merely for the convenience of the requesting attorney." *Majeske v. City of Chicago*, 218 F.3d 816, 825 (7th Cir. 2000) (quoting *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993)).

In support of its request, defendant has provided an invoice showing that $7,792.40 was the charge for producing daily transcripts during trial: 1288 pages of transcript at $6.05 per page (Bill of Costs, Ex. C). The rates established by the Judicial Conference are $3.65 per page for an ordinary (30-Day) transcript; $4.25 per page for a 14-Day transcript; $4.85 per page for an

---

[2]We further note that the entire amount of costs here would not be borne by one plaintiff, but spread among fifty-one. When the $21,445.19 we ultimately award is spread over fifty-one plaintiffs, the amount comes to an average of $420.49 per plaintiff. That modest amount is far less than the costs that an average plaintiff who loses a case (much less a five-year long case) must pay.

expedited (7-Day) transcript; and $6.05 per page for a daily transcript. https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_clerksoffice/rules/admin/pdf-orders/ General%20Order%2012-0003%20-%20Transcript%20Copy%20Rates.pdf. Copies cost $.90 per page for ordinary, 14-Day, and expedited transcripts, and $1.20 per page for daily transcripts. *Id.*

Defendant contends that the cost of daily transcripts was reasonable and necessary, because the City used them to draft its Rule 52(c) Motion for Judgment as a Matter of Law (doc. # 205) at the close of plaintiffs' evidence and its Revised Proposed Findings of Fact (doc. # 217) after trial (doc. # 234: Def.'s Mem. in Supp. of Bill of Costs at 7). Plaintiffs do not claim that it was unreasonable or unnecessary for defendant to obtain a transcript of the trial proceedings. Rather, they contend that the additional cost of daily transcripts beyond the cost of obtaining the transcripts on regular delivery was not reasonable or necessary, but merely was for the convenience of defendant (Pl.'s Obj. at 2-4).

Local Rule 54.1(b) states, in relevant part, that "the costs of the transcript or deposition shall not exceed the *regular copy rate* as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed unless some other rate was previously provided for by order of court." L.R. 54.1(b) (emphasis added). However, the district court may allow costs for expedited transcripts if the defendant can show that it "was reasonable and necessary to order transcripts on an expedited basis." *Se-Kure Controls, Inc. v. Vanguard Prods. Group*, 873F. Supp. 2d 939 (N.D. Ill. 2012) (quoting *Neuros Co., Ltd. v. KTurbo, Inc.*, No. 08-5939, 2011 WL 3841683, at *2 (N.D. Ill. Aug. 25, 2011)). *See also Corder v. Lucent Techs. Inc.*, 162 F.3d 924, 928-29 (7th Cir. 1998) (where the district court determined that the increased fees for ordering expedited deposition transcripts were necessary and justified in light

of the case schedule set by the court, the appeals court would not interfere and order the costs to be decreased to the price of ordinary transcripts).

"[T]he determination of necessity [of ordering expedited transcripts] must be made in light of the facts known when the transcript was requested. . ." *Majeske*, 218 F.3d at 825. "Courts consider several factors in determining whether to allow recovery of the cost of daily transcripts: (1) the length of the trial and the complexity of the issues, (2) whether a daily transcript was necessary to minimize disagreement over the testimony of witnesses, (3) whether proposed findings of fact were required, (4) whether the case involved expert witnesses whose cross-examination required knowledge of the exact wording of their previous testimony or that of any other witness, (5) the size of the claim, (5) and the importance of witness credibility." *Shanklin Corp. v. Am. Packaging Mach., Inc.*, No. 95 C 1617, 2006 WL 2054382, at *2 (N.D. Ill. July 18, 2006) (internal citations and quotations omitted). In addition, "[t]he additional cost of daily trial transcripts is reasonable and necessary when they are necessary for, among other things, direct and cross-examination of witnesses and to respond to the opposing party's motions." *Autozone, Inc. v. Strick*, No. 03 C 8152, 2010 WL 2365523, at *2 (N.D. Ill. June 9, 2010).

In this case, most of these considerations weigh against any claim of need for a daily transcript. The trial certainly involved complex legal issues, but it was not of such a length (five days) as to make daily transcripts necessary. Likewise, there was no expert testimony involved, and defendant does not assert that the daily copy was needed to minimize disagreement over witness testimony or to assess witness credibility. Rather, the City claims that the cost of daily trial transcripts was reasonable and necessary due to the size of the claim, and to use in drafting a Rule 52(c) Motion for Judgment as a Matter of Law at the close of plaintiffs' evidence and revised proposed findings of fact after trial (Def.'s Mem. at 7). We disagree, and find that

defendant's decision to order daily trial transcripts was a convenience for its attorneys and not a necessity.

*First*, we do not consider the ordering of daily transcripts of *all* proceedings to have been necessary to the preparation of a Rule 52(c) motion. Nor has the City pointed to any particular witness testimony that was so central that it was necessary to obtain a daily transcript for *that* particular witness. We have no doubt that having the transcripts may have been useful in drafting the motion. But, useful is not the same thing as necessary. Good lawyers long have been able to file effective Rule 52(c) motions based on their notes of testimony and the exhibits, without having a transcript; the City's lawyers could have done so as well.

*Second*, we recognize that the ordering of daily transcripts might be necessary when all parties know that a court will require post-trial findings. But, that was not the case here. We ordered the parties to file their proposed findings *before* trial. Thus, when defendant was ordering daily transcripts during trial, it could not have been because it was required to file post-trial findings. The fact that the Court later permitted the parties to file post-trial findings does not mean it was necessary or reasonable for the City to already have ordered daily transcripts in the hope we would permit post-trial findings. *Majeske*, 218 F.3d at 825 (the determination of necessity "must be made in light of the facts known when the transcript was requested").

*Third*, we recognize that if plaintiffs had prevailed, they may have made significant monetary claims. But, in light of the foregoing, that lone factor does not justify shifting to plaintiffs the cost of daily transcripts.

That said, we find that it would have been reasonable and necessary for defendant to order a 14-day trial transcript once the Court ruled that the parties could file revised statements of fact at the close of trial. Our August 24, 2015 order set the deadline for the revised proposed

10

findings as August 31, 2015 (doc. # 208), but this date was extended to September 11, 2015 (doc. # 216). We would have extended the date again to accommodate the time required for delivery of a 14-day transcript.

Thus, we will award costs for trial transcripts to defendant in the amount of $4.25 per page. This results in our reducing the costs awarded for trial transcripts from the $7,792.40 sought by defendant (at $6.05 per page for 1288 pages) to $5,474.00 (at $4.25 per page for 1288 pages).

**B.**

Defendant also seeks $10,256.49 in costs for deposition transcripts (Bill of Costs at 1-3). Fees for deposition transcripts "necessarily obtained for use in the case" are recoverable. *Montanez v. Simon*, 755 F.3d 547, 557 (7th Cir. 2014) (quoting 28 U.S.C. § 1920(2)). Plaintiffs seek to reduce defendant's request on the grounds that defendant is not entitled to costs associated with depositions of witnesses never called at trial, and that court reporter appearance fees exceed the maximum copy rate per page (Pls.' Obj. at 4-6).

**1.**

Defendant seeks costs for transcripts of depositions the City took during class discovery, including the depositions of Sergeants Ricardo Herrera, Sean Martin, James Corlett and Marlene Laurich, none of whom testified at trial. Plaintiffs contend that defendant is not entitled to the costs of these four deposition transcripts because these individuals did not testify at trial, and additionally because Sgt. Laurich dropped out as a plaintiff on the eve of trial (Pls.' Obj. at 5).

Contrary to plaintiffs' argument, "[t]he determination of necessity under 28 U.S.C. § 1920 . . . must be made in light of the facts known *at the time of the deposition*, without regard to intervening developments that render the deposition unneeded for further use." *Cassidy*, 338

11

F.3d at 712 (emphasis added); *see also Majeske*, 218 F.3d at 825 ("the introduction of testimony

from a transcript is not a prerequisite for finding that it was necessary"). In 2013, after this Court

granted conditional certification of plaintiffs' class and defendant was preparing for its upcoming

motion to decertify the class, it was reasonably necessary for defendant to depose a variety of

proposed class plaintiffs -- including Sgts. Herrera, Martin, Corlett and Laurich -- to learn the

similarities and differences in plaintiffs' experiences that underlied plaintiffs' claim that they

were subject to a common BOC-wide policy that violated the FLSA. The mere fact that these

individuals later did not testify at trial did not render their depositions unnecessary at the time

they were taken. Thus, we will not decrease the costs defendant seeks for taking depositions of

those plaintiffs.

## 2.

Plaintiffs also object to the costs defendant seeks for each deposition transcript because,

after including court reporter attendance fees, the deposition costs exceed the Northern District

of Illinois's ordinary maximum page rate of $3.65 (Pls.' Obj. at 6). However, contrary to

plaintiffs' argument, the Local Rules state that the court reporter's attendance fee may be added

to the maximum per page rate. Local Rule 54.1(b) provides that "[c]ourt reporter appearance fees

may be awarded *in addition* to the per page limit, but the fees shall not exceed the published

rates on the Court website unless another rate was previously provided by order of court." L.R.

54.1(b) (emphasis added). The Northern District of Illinois website states that fees for court

reporter attendance "shall not exceed $110 for one half day (4 hours or less), and $220 for a full

day."       http://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo.

Accordingly, defendant may not recover more than $110 or $220 (depending on the length of the

deposition) over the $3.65 per page rate.

For most deposition transcripts listed in its bill of costs, defendant requests per page fees of $3.55 per page, plus $110 in court reporter attendance fees. This does not exceed the maximum rate allowed. However, defendant made an error in calculating the costs of Sergeant Robert Lohman's deposition transcript. Defendant paid for an expedited transcript of Sgt. Lohman's deposition transcript -- 116 pages at $4.10 per page -- for a total of $475.60 (Bill of Costs, Ex. B). However, in the itemization of its bill of costs, defendant miscalculates the cost of Sgt. Lohman's deposition transcript as "116 pages x 3.55=$475.60" (Bill of Costs at 2). We reduce the costs defendant seeks for Sgt. Lohman's deposition transcript to the maximum allowable rate of $3.65 per page; 116 pages at this rate totals $423.40. After adding the $110.00 for the court reporter appearance fee, defendant may recover $533.40 total for Sgt. Lohman's deposition (down from defendant's requested $585.60), thus decreasing the total award for deposition costs by $52.20 to $10,204.29.

## C.

Plaintiffs contest defendant's request for $16,200.00 in costs charged by Aloha Document Services, a third party vendor, whom defendant retained to assist in the production of plaintiffs' emails (Pls.' Obj. at 7-8). Plaintiffs had requested email records of each member of the opt-in plaintiff class during discovery, and in April 2014, defendant produced the emails in non-chronological order. On June 3, 2014, plaintiffs filed a motion to compel the City "to produce chronologically ordered emails of the collective class members" (doc. # 121: 6/3/14 Mot. to Compel at 1). Plaintiffs explained that their "request of chronologically ordered, and easily reviewable emails is reasonable as otherwise, the emails would simply be a collection of random, individual, electronic documents that would take hundreds of hours to reorganize into a cognizable *searchable* form" (*Id*. at 5) (emphasis added). This Court granted plaintiffs' motion to

compel and ordered defendant "to provide emails in chronological format, by officer, to plaintiff" (doc. # 124). Defendant retained Aloha to assist it in complying with this order.

Aloha ultimately charged defendant $16,000.00 for "Digital Tech Time per GB: Tiff Conversion, OCR, Endorse & Export for *Searchable* PDF" and $200.00 for 2 hard drives (Bill of Costs, Ex. E) (emphasis added). Defendant contends that these costs are recoverable under Section 1920(4), which allows recovery for "the costs of making copies of any materials where the copies are necessarily obtained for use in the case" (Def.'s Mem. at 3).

Plaintiffs dispute this description of Aloha's services, contending that "Aloha's primary charges were for converting [plaintiffs'] emails into searchable PDFs," but that the emails on the hard drive plaintiffs received from defendant "were anything but searchable" (Pls.' Obj. at 7). Plaintiffs suggest that this was the result of either incompetence by Aloha ("Aloha failed to properly convert the vast majority of emails into a searchable form") or malfeasance by defendant ("Defendant converted the emails into an unsearchable form prior to tendering the hard drive to Plaintiffs") (*Id.*).[3] Plaintiffs assert that they "should not have to pay for the costs [of] converting the emails into searchable form, when the Plaintiffs were tendered emails that were unsearchable. Nor should Plaintiffs have to pay for emails they never received" (*Id.* at 8).

In its reply, defendant responded that it "is of no consequence" if the emails were adequately searchable because they were produced in chronological format, by officer, as directed by the Court (Def.'s Reply at 10-11). In addition, in his declaration, Scott Youngblood, a project consultant for Aloha, has asserted that "none" of the $16,200.00 cost "was specifically tied to making the e-mail files 'searchable'" (Youngblood Decl., at ¶ 7).

---

[3]Defendant strongly denies any malfeasance, and attaches a declaration from Scott Youngblood, a representative from Aloha, to counter plaintiffs' insinuations that defendant tampered with the email evidence (Def.'s Reply at 8-9; Def.'s Reply, Ex. B: Youngblood Decl.). We find Mr. Youngblood's declaration credible as to when Aloha delivered the emails to the City, and we find any suggestion by plaintiffs of defense malfeasance to lack evidentiary support.

The Seventh Circuit has held that a prevailing party may recover "costs for converting computer data into a readable format in response to [a] discovery request." *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir.2009). However, as many courts in this district have noted, the Seventh Circuit has not fully addressed the extent to which e-discovery costs may be taxed against a non-prevailing party under 28 U.S.C. § 1920. *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, No. 13 C 321, 2016 WL 316865, at *6 (N.D. Ill. Jan. 26, 2016) (Kennelly, J.) (collecting cases). Therefore, many courts in this circuit have followed the Third and Fourth Circuits' reasoning in *Race Tires of America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012), and *Country Vintner of N. Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 260 (4th Cir. 2013). *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 52 F. Supp. 3d 893, 901-02 (N.D. Ill. 2014) (Brown, Mag. J.) (collecting cases). We find the reasoning in *Kellogg* and *Life Plans* persuasive, and we follow the path set forth in *Race Tires* and *Country Vintner* distinguishing between e-discovery costs that are recoverable under Section 1920(4) and those that are not.

According to these cases, not all of Aloha's services -- "Digital Tech Time per GB: Tiff Conversion, OCR, Endorse & Export for Searchable PDF" -- are costs that may be taxed under Section 1920(4). Although converting files to TIFF or PDF format -- *i.e.*, converting computer data into a "readable format" -- is the equivalent of "making copies" under Section 1920(4) and thus recoverable, "making a document searchable is the equivalent of work counsel would perform in the absence of OCR [optical character recognition]," and these costs are not recoverable. *Kellogg*, 2016 WL 316865, at *6 (citing *Life Plans*, 52 F. Supp. 3d at 903). "The process of ensuring a document has OCR does not produce a new document, or a copy of a document. Rather, it simply enhances an already-existing document. Thus this cannot be

15

considered 'making copies' under section 1920(4)." *In re Text Messaging*, 2014 WL 4343286, at *4 (citing *Life Plans*, 52 F. Supp. 3d at 902-03).

"[E]ven if 'extensive processing of ESI is essential to make a comprehensive and intelligible production . . . . that does not mean that the services leading up to the actual production constitute making copies.'" *Life Plans*, 52 F. Supp. 3d at 901-02 (quoting *Race Tires*, 674 F.3d at 169). Thus, a defendant may not recover for OCR and related e-discovery processes unless they were "fundamental" to ensuring that the documents were readable, as distinguished from searchable. *Kellogg*, 2016 WL 316865, at *6. It does not matter for purposes of Section 1920 if the parties had agreed in advance to make searchable the electronic documents produced in the litigation. *Id*.

Here, as in *Kellogg*, *Life Plans*, and *In re Text Messaging*, defendant has not shown that the processes included in "Digital Tech Time per GB: Tiff Conversion, OCR, Endorse & Export for Searchable PDF" all constitute making copies under Section 1920(4). Defendant broadly asserts that the entire $16,200.00 in costs is recoverable because they were "reasonable and necessary to the City's defense of this case" and "the direct result of Plaintiffs' motion to compel" defendant to produce plaintiffs' emails chronologically and organized into separate folders by plaintiff (Def.'s Mem. at 3). In its reply, defendant summarily states that "the entire cost of the project was tied to Aloha re-organizing the e-mails in chronological format and separating them by officer" (Def.'s Reply at 11). Contrary to defendant's assertion, the entire $16,200.00 paid to Aloha is not recoverable for three reasons.

*First*, the fact that a certain process was "tied to" or "related to preparing and producing" e-discovery does not mean that the process itself is compensable as "making copies." *In re Text Messaging*, 2014 WL 4343286, at *5 (citing *Race Tires*, 674 F.3d at 169). "[V]ague

16

pronouncements" that e-discovery process is related or tied to producing e-discovery is "insufficient to establish that these costs are recoverable under section 1920(4)." *Id.*, at *3. "[W]ithout more or any explanation," defendant cannot recover costs such as "tech time" and "OCR," because they may constitute steps prior to or unrelated to copying. *Id.*, at *6.

*Second*, Mr. Youngblood's statement that none of the work (and related charges) was "specifically tied" to making the emails searchable does not persuade us that none of the work was related to making the files searchable. To the contrary, the invoice Aloha sent the City described the work as including, among other things, creating "searchable PDF." The cost of making a document searchable is not a taxable cost. *Kellogg*, 2016 WL 316865, at *6.

*Third*, the same is true for taking existing documents and placing them into chronological order. Rearranging documents chronologically "does not produce a new document or a copy of a document;" it is thus not "copying" within the meaning of Section 1920(4). *In re Text Messaging*, 2014 WL 4343286, at *4. Rather, that work falls in the category of "enhanc[ing] an already-existing document." *Id.*

That said, it is evident that the cost for some of the work performed by Aloha would be recoverable under Section 1920(4), specifically, TIFF conversion. A party need not "submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs. Rather, [the party is] required to provide the best breakdown obtainable from retained records." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). However, neither Aloha's invoice, nor defendant's briefs, nor Mr. Youngblood's declaration provide any sort of breakdown of the costs for each service that Aloha provided. Defendant thus has not provided the Court with a mechanism to determine precisely how much of the total cost charged by Aloha is recoverable.

Where the prevailing party has not met its burden of showing that the requested costs were necessarily incurred and reasonable (and not merely for the convenience of defendant's attorneys), courts in this district have either reduced copying costs by a substantial percentage or denied copying costs entirely. *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 979 (N.D. Ill. 2010) (collecting cases denying costs entirely or imposing a 25 to 50 percent reduction in costs). In *eSpeed*, this Court used its discretion to award the defendant 25 percent of its original request instead of denying it entirely because we determined that the defendant had "incurred considerable—and verifiable—copying expenses," and that a 75 percent reduction in costs prevented the defendant from benefitting from the shortcomings in its proof and allowing it to recover more compensation for costs than it should. *Id.* at 980. Similarly, in *Kellogg*, where the defendant sought reimbursement for a combination of TIFF conversion, insertion, extraction, and OCR, the court allowed the defendant to recover 25 percent of these costs in the absence of a breakdown, because only TIFF conversion was recoverable under Section 1920(4). *Kellogg*, 2016 WL 316865, at *7.

We follow the same course here. Despite the absence of a breakdown of the fees charged by Aloha, we will allow defendant to recover 25 percent of the fees charged by Aloha, to account for the TIFF conversion portion of the invoice for "Digital Tech Time per GB: Tiff Conversion, OCR, Endorse & Export for Searchable PDF." We therefore award defendant $4,000.00 for that work, rather than the $16,000.00 sought. We also will also allow the cost of the two hard drives of the email data -- one copy for defendant and one copy for plaintiffs -- at a total of $200.00. We find that one copy for each party was reasonably necessary in the absence of the provision of paper copies. As a result, we will award a total of $4,200.00 for the costs defendant incurred from Aloha.

**D.**

Defendant seeks to recover $8,074.35 for "[i]n-house copying for document productions,

deposition exhibits, the City's response to Plaintiffs' motion to certify the collective action, the

City's motion to decertify and motion for summary judgment, and trial preparation" (Bill of

Costs at 3). Specifically, defendant states that this amount includes:

> copying expenses incurred in the photocopying or the electronic reproduction of:
> the production of thousands of documents requested by Plaintiffs in discovery,
> which included time and attendance records and cell phone records for Jeffrey
> Allen and all opt-in Plaintiffs for an approximate three-year period (including
> over twenty (20) former opt-in Plaintiffs who were dismissed for want of
> prosecution); deposition exhibits for approximately eighteen (18) depositions;
> documents that were attached to the City's response to Plaintiffs' motion for
> conditional certification, the City's motion to decertify the collective action and
> the City's motion for summary judgment; and documents the City used at trial
> and to prepare for trial.

(Def.'s Mem. at 2-3). Defendant attaches Exhibit D to its bill of costs as evidence for these

copying costs (*Id.*; *see* Bill of Costs, Ex. D).

Defendant contends that these copies were "necessarily obtained for use in the case" and

thus recoverable under Section 1920(4) (Def.'s Mem. at 4). The phrase "for use in the case"

refers to "materials actually prepared for use in presenting evidence to the court." *Smith v.

Chicago Transit Auth.*, No. 12 C 8716, 2015 WL 2149552, at *6 (N.D. Ill. May 6, 2015)

(internal citations and quotations omitted). "These materials include copies attributable to

discovery and copies of pleadings, motions, and memoranda submitted to the court, not copies

made solely for the convenience of counsel." *Perry v. City of Chicago*, No. 08-4730, 2011 WL

612342, at *2 (internal quotations and citations omitted).

Defendant's Exhibit D contains 35 pages of printouts listing dates from September 1,

2010, through September 10, 2015, purporting to show the number of copies defendant made on

individual dates, and the total cost of the copies made on each date, calculated at $.10 per page

(Def.'s Ex. D). Initially, we address plaintiffs' contention that the 35 pages of copy expenses in Exhibit D do not add up to the $8,074.35 that defendant seeks (Pls.' Obj. at 10). When plaintiffs manually added the 35 pages of alleged copying costs, they came up with $6,318.94 (Id.). Moreover, as plaintiffs point out, copies charged at $.10 per page should end in a zero (Id., n.1).

In its reply brief, defendant did not respond to plaintiffs' allegation that defendant miscalculated its copying costs (see Def.'s Reply at 12-13). Defendant's failure to explain or address the discrepancy plaintiffs found is troublesome. By this Court's calculations, the costs in Exhibit D total $6,267.78, even less than plaintiffs believed, and $1,806.57 less than defendant seeks. Moreover, several entries on the printouts total one to two cents more than $.10 per copy, resulting in a total overcharge of $.18. Thus, the actual amount of defendant's alleged copy costs is $6,267.60.

But this is not the only problem with defendant's request for copying costs. Despite claiming that it seeks recoverable copying costs -- including discovery and copies of pleadings, motions, and other court memoranda (Def.'s Mem. at 2-3) -- Exhibit D lacks any description of the purpose for which any of the copies were made (Def.'s Ex. D). Defendant argues that in a document-intensive case such as this one, the City "is not required to provide a detailed explanation for the necessity of each page copied" (Def.'s Reply at 12-13). Here, however, defendant has provided no explanation as to the necessity of any pages it copied. As a result, not only can we not determine whether the copies defendant made were necessary and recoverable, but even if they were, we cannot determine whether defendant made a reasonable number of copies.

Defendant has thus failed to meet its burden of showing that its requested costs were necessarily incurred and reasonable and not merely for the convenience of its attorneys. This is

especially problematic in this case where, even if defendant could show that the copying costs it seeks were taxable costs, we would not allow defendant to recover all of the copying costs it lists in its memorandum. For example, we would not allow defendant to recover any copying costs related to its motion for summary judgment, which this Court summarily denied because it "ignore[d] the [Court's] ruling denying decertification" (doc. # 224: 3/9/2015 Tr. at 9).

In *eSpeed*, despite a lack of detail in the explanation of the plaintiff's copying costs, we awarded the plaintiff 25 percent of its original request for copying expenses because we recognized that the plaintiff "did in fact incur substantial copying expenses, many of which were likely necessary and reasonable." *eSpeed*, 750 F. Supp. 2d at 980. Here, too, there is no doubt that defendant incurred substantial copying costs during this five-year litigation. In recognition of this, despite the dearth of explanation by defendant, we will award defendant 25 percent of their copying costs. As explained above, their copying costs total $6,267.60, not the $8,074.35 they sought. We thus award 25 percent of $6,267.60, for a total of $1,566.90.

## CONCLUSION

For the foregoing reasons, we grant in part and deny in part defendant's bill of costs. We will allow costs in the total amount of $21,445.19 ($5,474.00 for trial transcripts, $10,204.29 for deposition costs, $4,200.00 for the copying costs of TIFF conversion, and $1,566.90 for copying costs), which is a decrease from defendant's request for $42,323.24 in costs.

While this Court has declined to stay the adjudication of defendant's bill of costs, we grant plaintiffs' request to stay the payment of costs pending plaintiffs' appeal, as is common in this district. *See, e.g., In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 854 (N.D. Ill. 2015); *see also In re Text Messaging*, 2014 WL 4343286, at *1.[4]

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE:  March 16, 2016

---

[4]Defendant has not objected to plaintiffs' request to stay payment of costs pending appeal.

22